Gerald W. MONETT
v.
The UNITED STATES.
No. 40–67.

United States Court of Claims.
Dec. 12, 1969.

John C. Smuck, Washington, D. C., attorney of record, for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S MOTION TO DISMISS THE PETITION AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

In the first half of 1965 the plaintiff was a Sergeant First Class (E–7) with the Army in Vietnam. A court-martial charge was brought against him, arising out of a motor vehicle accident in which a serviceman was killed. Plaintiff, represented by appointed military defense counsel, offered in writing to plead guilty to this charge,

* * * provided the Convening Authority will reduce the charge of Involuntary Manslaughter to Negligent

Homicide and provided further the Convening Authority will not approve a sentence in excess of Bad Conduct Discharge and Confinement at Hard Labor for one year.

This offer was accepted and plaintiff did plead guilty. Upon his plea, the court-martial found him guilty of the charge and specifications (as changed) and sentenced him to reduction to the grade of Private First Class (E–3) and forfeiture of $50 per month for 18 months. No confinement was imposed and, of course, plaintiff was not given a discharge.[1] The convening authority approved the reduction in grade but decreased the forfeiture to one year.

After Monett complained that the sentence, as approved, violated his agreement with the convening authority, The Judge Advocate General (acting under 10 U.S.C. § 869) referred the case to a Board of Review for appellate examination under 10 U.S.C. § 866. Military appellate defense counsel were appointed for plaintiff who made the point that the guilty-plea agreement did not authorize any sentence of pay-forfeiture or of reduction-in-grade. The Board, with a dissent by one of its three members, held the sentence of forfeitures and reduction-in-grade to be incorrect in law, as violating the agreement, and set it entirely aside. The Judge Advocate General then certified the case to the United States Court of Military Appeals for review under 10 U.S.C. § 867(b) (2) on the question of whether the Board was correct in its action. At the Court of Military Appeals stage, plaintiff was represented by both civilian and military counsel. That court reversed the Board of Review and held the sentence correct in law and not barred by the agreement, and it directed resubmission to the Board to recanvass the sentence.

16 U.S.C.M.A. 179 (1966). Later, the court denied a rehearing petition by order, without opinion. On return of the case to the Board, the only sentence approved was reduction to the grade of E–4 (corporal).

Plaintiff then pursued another remedy by applying to the Army Board for Correction of Military Records to change his records to show that he had never been reduced in grade. That Board denied the application, without a hearing, on the formal ground that "insufficient evidence has been presented to indicate probable material error or injustice."

This suit was thereafter filed to recover the difference between the pay of a Sergeant First Class (E–7) and the pay of the lower grades in which plaintiff had to serve since his reduction in June 1965.[2]

The parties are at odds on the threshold issue of whether this court can consider the merits of the case. Plaintiff affirms that a constitutional issue is involved since his guilty plea, and consequent waiver of constitutional rights, was induced (in his view) by a solemn promise which was not kept. *Cf.* McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Scott v. United States, No. 20,954 D.C.Cir., 419 F.2d 264. The Government answers that the question is purely one of non-constitutional military law (*cf.* United States v. Augenblick, 393 U.S. 348, 352–353, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969)), and that in any event this court is precluded from weighing the matter because the Court of Military Appeals dealt "fully and fairly" with Monett's claim and gave him full and "fair consideration". See Burns v. Wilson, 346 U.S. 137, 142, 144, 73 S. Ct. 1045, 97 L.Ed. 1508 (1953). Plaintiff's riposte to the latter point is that

---

1. In military practice, the court-martial is not informed, prior to its consideration of what sentence to impose on a plea of guilty, of the existence or terms of an accused's pre-trial agreement with the convening authority.

2. He has apparently been reimbursed for the forfeitures which were disapproved by the Board of Review, and does not sue to recover them. We are informed that he has again risen to the grade of E–7 and therefore that his monetary claim is now susceptible of full computation.

the doctrine of "full and fair consideration" is inapplicable to constitutional claims, such as this is said to be, invoking primarily legal, non-factual issues. See Shaw v. United States, 357 F.2d 949, 954, 174 Ct.Cl. 899, 905 (1966) ; Kauffman v. Secretary of the Air Force, No. 21,227, D.C.Cir., 415 F.2d 991, 997 (1969).

We do not reach or decide these problems as they apply to this case. Assuming *arguendo* that we have the full power plaintiff urges,[3] we agree with the Court of Military Appeals and therefore hold that plaintiff is not entitled to recover in any event.[4] We base this ruling on the full court-martial record, parts of the Correction Board record offered by the parties, and a joint statement of facts.[5]

■ Plaintiff's undertaking to plead guilty provided that his sentence, as finally approved, would not be "in excess of" a bad conduct discharge and imprisonment (at hard labor) for a year. Those words would normally mean that the ultimate punishment would not be more severe or more onerous than the stated maximum, and it is not disputed that the reduction-in-grade and forfeitures actually ordered were less severe, a diminished punishment. But plaintiff maintains that his agreement must be construed in the light of three prior Board of Review decisions (United States v. Renner, CM 393739, January 10, 1957 (unpublished) ; United States v. Brodnax, 28 CMR 567 (1959) ; and United States v. Highsmith, 34 CMR 664 (1964)) which, he says, read comparable pre-trial compacts as forbidding, not only a more severe punishment, but also the imposition of any type of punishment different from that specifically mentioned. In this instance, that would mean two things: first, nothing other than confinement or discharge (the only types of punishment mentioned in the agreement) could be approved, and, second, since the court-martial did not impose either of those kinds of sanction (but only reduction-in-grade and forfeitures) no sentence at all could be approved and the plaintiff was entitled to go without any punishment.[6]

■ For our purposes, it is enough to say, as one answer to this contention, that none of the three board decisions which plaintiff invokes is a precedent for the precise case before us. Since the forfeitures have already been set aside within the military system, all that concerns us now is the reduction. As to that, there is a special statute which is controlling. Article 58a of the Uniform Code of Military Justice, 10 U.S.C. § 858a—enacted on July 12, 1960—provides that, unless otherwise prescribed by regulations, "a court-martial sentence of an enlisted member in a pay

3. Plaintiff does not argue that his case is covered by O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

4. This is one of those cases in which it is easier for the court to decide the merits than jurisdiction. *Cf.* Brooks v. Dewar, 313 U.S. 354, 359–360, 61 S.Ct. 979, 85 L.Ed. 1399 (1941). It is impracticable or at least difficult to separate out from the merits the issues that we would have to decide in order to determine whether we have jurisdiction, assuming it turns on whether plaintiff makes a substantial claim of a violation of his constitutional rights. Of course it would have to be done if we contemplated a decision the other way.

5. At a pretrial conference, both sides concurred that these items constituted the entire record for consideration by this court and that they did not desire to offer any further proof.

6. As noted above, fn. 1, *supra*, the court-martial was not told of the terms of the pre-trial agreement. Also, "[i]mplicit in this agreement, of course, as in every such case, was the fact that the accused was to have the benefit of any lesser sentence adjudged by the court". United States v. Brice, 17 U.S.C.M.A. 336, 341 (1967) (opinion of Judge Ferguson, concurring in part and dissenting in part). Thus, plaintiff's position is that, if he or his counsel could persuade the court-martial to withhold confinement or a bad conduct discharge, and to levy only another type of punishment, the necessary result would be that he would not be punished at all.

grade above E–1, as approved by the convening authority, that includes—

(1) a dishonorable or bad-conduct discharge;

(2) confinement; or

(3) hard labor without confinement;

reduces that member to pay grade E–1, effective on the date of that approval". It follows that, after July 1960, an agreement by a sergeant first class to accept confinement at hard labor would necessarily entail a reduction-in-grade upon approval of such a sentence.

It is on this point that the three Board cases are distinguishable. United States v. Renner, *supra*, did not at all involve a reduction in connection with an agreement to accept confinement, and anyway pre-dated the enactment of Article 58a. United States v. Brodnax, *supra*, did invalidate a reduction to the grade of recruit E–1—it does not appear whether or not the reduction was part of the court-martial's own sentence—as inconsistent with a guilty plea agreement that the final sentence should not be in excess of confinement for one year (as well as dishonorable discharge, and total forfeiture), but that decision came before 1960 and the adoption of Article 58a. At that time, reduction did not automatically follow upon confinement (*cf.* United States v. Simpson, 10 U.S.C.M.A. 229 (1959)). United States v. Highsmith, *supra*, was decided after 1960 but did not involve a reduction ordered by the court-martial; the reduction set aside by the Board was established by the convening authority in commutation, and was apparently vacated on review under the doctrine of United States v. Powell, 12 U.S.C.M.A. 288 (1961), that even under Article 58a a reduction cannot be imposed as part of a court-martial sentence unless it is ordered by the court-martial itself.[7] In our case, on the other hand, the court-martial did sentence Monett to reduction and it is therefore the court-martial's own sentence which is challenged.

The short of it is that none of the three Board of Review cases (*Renner, Brodnax, Highsmith*) dealt with the special situation we have here of the validity of a reduction ordered by a court-martial itself, after 1960, where the pre-trial agreement envisaged confinement at hard labor (but said nothing expressly about reduction). With respect to that exact point, all three cases are distinguishable on substantial grounds, and we think that plaintiff errs in saying that any informed military lawyer would have assumed, on the basis of those decisions, that plaintiff's agreement necessarily forbade any reduction in grade (whether or not confinement was ordered) even if imposed by the court-martial.[8]

Plaintiff seeks to avoid this conclusion by stressing the broad theory of the three Board of Review cases that, in such a pre-trial arrangement, the individual components of punishment (i. e., confinement, discharge, forfeitures) are treated separately, as well as collectively, so that no greater punishment can be

---

7. In *Powell*, the court distinguished administrative reduction-in-grade from a judicial reduction imposed by the court-martial itself.

The *Highsmith* opinion did not discuss its elimination of the reduction portion of the approved sentence, concentrating instead on the reasons for vacating the forfeitures imposed by the convening authority (the court-martial sentence had been limited to confinement for one year). The reversal of the reduction-in-grade could not have been based on a violation of the pre-trial agreement which expressly contemplated a sentence including "reduction to the lowest enlisted grade".

8. Plaintiff is mistaken in suggesting that the *Powell* case prohibits (even after Art. 58a) a convening authority's approval of a reduction-in-grade in the circumstances here. All that *Powell* forbids is the addition by the convening authority of reduction (as punishment) where the court-martial did not itself properly impose it. The *Powell* opinion is not inconsistent with the view that an agreement to accept confinement necessarily implies an agreement to accept a reduction if imposed by the court-martial.

permitted within each category than is specified in the agreement. The argument is that the Court of Military Appeals rejected this over-all approach in its decision here in its *Monett* case, as well as later in United States v. Brice, 17 U.S.C.M.A. 336 (1967), but that this turn-about should not have been retroactively applied. We may assume *arguendo* that there could be circumstances in which it would be improper to read back a total rejection of the "divisibility" theory into prior guilty-plea agreements, but, as we have already suggested, this is not an instance in which it is necessary to discard that theory *in toto* in order to hold for the Government. The bearing of Article 58a makes this case special. To decide it, one need go no further than to hold that under that statute an agreement to undergo confinement necessarily contemplates a reduction-in-grade. While the Court of Military Appeals may have gone beyond, in its opinion adverse to plaintiff, and rejected the "divisibility" theory entirely, it also relied squarely upon Article 58a as pertinent to this case. 16 U.S.C.M.A. at 182.[9]

Moreover, plaintiff cannot make the argument that in fact he understood, rightly or wrongly, *Renner-Brodnax-Highsmith* as prohibiting any reduction in his case, and relied upon that understanding in entering into the agreement. He did not make that factual argument within the military system, and neither there nor here has he presented anything in the nature of proof, or an offer to prove, that that was actually his understanding. See note 5, *supra*.[10] Rather, it is clear that he understood that confinement (to which he had agreed) always entailed reduction; his defense counsel at the court-martial told the court "that administratively any time a man is given hard labor without confinement or confinement with hard labor, he is automatically reduced to the grade of E–1." And it is hard to believe that an experienced noncommissioned officer could have really thought at the time he entered into the agreement that, by acceding to a maximum of one year's confinement and a bad conduct discharge, he would go scot-free if his counsel succeeded in persuading the court-martial not to impose the penalties of imprisonment or discharge, as too harsh, but to give the lesser sentence of a partial reduction.

On these grounds, we grant defendant's motion to dismiss (which we treat as a motion for summary judgment, in view of the matters outside the pleadings we have considered) and deny plaintiff's motion for summary judgment. The petition is dismissed.

---

9. It is not without significance that Judge Ferguson, who dissented from the subsequent decision in United States v. Brice, *supra*, 17 U.S.C.M.A. 336—which unqualifiedly and expressly rejected the doctrine that the sentence should be broken into its component parts and compared with the pre-trial agreement, component for component—joined in the opinion in *Monett's* case and said in his *Brice* dissent that he continued to adhere to *Monett*. Judge Ferguson was also the author of the *Powell* decision (which plaintiff erroneously sees as inconsistent with *Monett*). See fn. 8, *supra*.

10. In his petition for reconsideration by the Court of Military Appeals, he stated, summarily, that the court's construction of the agreement differs "from the consistent construction given similar agreements in *Renner*, *Brodnax*, and *Highsmith*" and that "the appellee must be *presumed* to have entered into his agreement believing those cases to be the law" (emphasis added). The Government answered, correctly, that "the appellee [plaintiff] does not now assert and has never asserted that he in fact relied upon these opinions, nor does the record in any way suggest that the appellee misunderstood his pretrial agreement."