**Ernest W. MILLER**

v.

**The UNITED STATES.**

No. 122–72.

United States Court of Claims.

Jan. 18, 1973.

Donald P. Arnavas for plaintiff; James I. Burkhardt, Alexandria, Va., attorney of record. Richard A. Bartl, Washington, D. C., of counsel.

Herman L. Fussell, Washington, D. C., with whom was Asst. Atty. Gen. Kent Frizzell, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

This is a suit by the assignee of an option to purchase certain land in the City of Titusville, Brevard County, Florida. The plaintiff complains that the defendant, under the option language and other related documents, represented that the land in question was riparian land when it was not. Plaintiff claims that he suffered damages to the extent of $34,689.00 because the land was not riparian land. Relief on account of the defendant's breach of contract is premised upon our general Tucker Act jurisdiction, 28 U.S.C. § 1491 (1970). The case is before this court on cross-motions for summary judgment. For reasons hereinafter stated, we hold for the defendant, allowing its motion for summary judgment.[1]

There is no genuine issue as to any material fact. On May 29, 1967, a joint venture composed of J. L. Williams, B. J. Chafin, and James C. Hadsell granted the Postmaster General of the United States an option to purchase certain land in Titusville, Florida,[2] for a total price of $100,000.00. The optioned lot was basically 250 feet wide, fronting on the east side of U. S. Highway No. 1, and ran back 500 feet in an easterly direction into the Indian River. At the time, approximately 50 percent of the lot was under water. The 500-foot optioned lot was a part of a lot owned by the joint venture, running 664 feet from the highway to the bulkhead line in the river. The location of the 664-foot lot fronting on the highway and ending at the bulkhead line on the river is well illustrated in the drawing reproduced herein which is a portion of a dredge and fill map attached to a United States Army Corps of Engineers dredge and fill permit, dated April 29, 1966, issued to the joint venture.

1. The Government also makes the jurisdictional argument that if the plaintiff has a claim against anyone, it is against the joint venturers. When a party raises a jurisdictional argument, we are not required to decide whether or not we have jurisdiction if the case is submitted on cross-motions for summary judgment and we can see from the record that the claim is without substance on the merits. Monett v. United States, 419 F.2d 434, 190 Ct.Cl. 1 (1969), cert. denied, 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970).

2. The description of the land, as set forth in the option, is as follows:

SOUTH DESCRIPTION

Commence at the N.W. Corner of Section 15, Township 22 South, Range 35 East, Brevard County, Florida; thence run N89°41'37"E along the North line of said Section 15, a distance of 3,990.97 feet more or less to a point on the Easterly right of way line of U.S. Highway No. 1, (STATE ROAD No. 5); thence Southeasterly along said Easterly R/W line, a distance of 536.8 feet more or less to an intersection point with the South property line of Lot 4, Block A, as recorded in "BOYES SUBDIVISION," Plat Book 2, Page 40 of the Public Records of Brevard County, Florida; thence run S88°55'38"E along said South property line and the extension of said line, 512.54 Feet to a point in the Indian River, said point being 500 Feet by right angle measurement from the afore mentioned Easterly R/W line of U.S. Highway No. 1, said point being the POINT OF BEGINNING; thence reverse the previous bearing and run N88°55'38"W, 512.54 feet back to the Easterly R/W of said U.S. Highway No. 1; thence Northerly along said R/W line 250.00 feet; thence S88°55'38"E and parallel with the said South propert (sic) line of Lot 4, 512.54 feet more or less to a point 500 feet, by right angle measurement from the said Easterly R/W line of U.S. Highway No. 1; thence run Southeasterly, parallel with said Easterly R/W line, 250 feet more or less to the POINT OF BEGINNING.

order #3024

/s/ TOM C. GRUSENMEYER
Tom C. Grusenmeyer
Reg. Fla. Land Surveyor #1542

## PLAN

[A8027]

On May 3, 1968, the Post Office Department issued an "Advertisement for Bids to Lease Construction" covering the Titusville land; and at approximately the same time, the plaintiff was furnished with a site plan, dated April 3, 1968, for construction of the Post Office building. The option was assigned by the Post Office Department to the plaintiff on June 30, 1968. By letter of July 11, 1968, the plaintiff exercised his right to purchase and directed the joint venture to proceed with the fill.[3] In June or July, 1968, the joint venture filled the submerged land. The problem which we face in the instant case results from the fact that the joint venture filled not only the submerged land to a point 500 feet in an easterly direction from U. S. Highway No. 1, but it continued with the fill another 162 feet, to the bulkhead line in Indian River. This continuation of fill beyond

the 500-foot point to the bulkhead line created a parcel of land between plaintiff's land and the bulkhead line of some 250 x 162 feet.

By an "Amendment To Option To Purchase Land," dated January 15, 1968, the option was amended to provide that

\* \* \* the work described in the letter dated November 6, 1967, from Tom Ellis, Incorporated, agent for the [joint venturers], will be commenced promptly after exercise of the option and will be satisfactorily completed within ninety (90) days after the exercise of the said option, and, further, that the Closing for the property will take place within ten (10) days after such satisfactory completion of the work.

Thus, the plaintiff had notice of the November 6, 1967, letter from the joint venture to the Post Office Department,

3. The plaintiff subsequently completed the construction and the Government, on June 2, 1969, leased the premises, for a period of 15 years with the option periodically to renew for 30 additional years.

wherein the joint venture agreed to do as follows:

3. The Joint Venturers and/or their assigns will fill and bulkhead in accordance with Corps of Engineer guidelines and will protect the entire site from encroachment by water and that the property line running east to west on the south side of the lot and on the north side will be protected by bulkhead or properly stabilized *fill protected by a main bulkhead line at the river frontage running both north and south from our property.* [Emphasis supplied.]

The work described in this letter was part of the option and, in fact, the closing was not to occur until after the work was completed.

Enclosed with the said letter of November 6, 1967, was a copy of the United States Army Corps of Engineers dredge and fill permit dated April 29, 1966, authorizing the joint venture

* * * to construct a bulkhead, and to dredge and fill, the dredged material to be deposited shoreward of the bulkhead, in Indian River, westerly shore, at your property located about midway between Jackson and Harrison Streets, about 2.2 miles south of State Road 402 Causeway, Titusville, Florida, in accordance with plans attached hereto.

A portion of the plan referred to in the permit is the dredge and fill map re-

produced earlier in the opinion. An examination of the dredge and fill map and a careful reading of the above quotation from the letter of November 6, 1967, conclusively shows that the plaintiff knew, or should have known, that the joint venturers had a permit to fill the optioned property in question as well as an additional 162 feet of property up to the bulkhead.[4]

We find additional confirmation for this view in plaintiff's letter to the joint venture dated July 11, 1968. In relevant part, this letter states:

* * * Consider this your notice that the option is exercised and understand that the work under the option is to be completed within the next ninety (90) days.

* * * * * *

I would like to be informed as to what schedule you have in doing the fill work *as outlined in the drawings and option* and the contemplated completion of same. [Emphasis supplied.]

Plaintiff having taken the assignment of the option with actual knowledge of these facts or having documents from which he should have known such facts cannot be heard to complain.

Plaintiff relies heavily on the site plan, dated April 3, 1968, given to plaintiff before the assignment. It is important that the site plan on its face specifically provided that:

In accordance with option to the Post Office Department, dated May

---

4. Under the laws of Florida, bulkhead lines have much significance in transactions involving riverfront properties in that there is a mandatory recording statute with relation to established and approved bulkhead lines. 12 F.S.A. § 253.122 (1972–73 Supplement) provides as follows:

§ 253.122 Power to fix bulkheads

* * * * *

(5) Upon the establishment and approval of any bulkhead line or lines in the manner herein provided for, a drawing showing the location of such bulkhead line or lines shall be promptly filed in the public records of the county where the same may be located and re-

corded in the book of plats of said county. * * *

We observe that the same bulkhead line shown on the dredge and fill map attached to the dredge and fill permit of April 29, 1961, reproduced earlier in this opinion, is referred to in the warranty deed of September 25, 1968, from the joint venturers to the plaintiff, indicating the east end of a drainage easement as follows:

* * * to the intersection with the City of Titusville Bulkhead line *as recorded in B. H. Book, 1 at pages 33 thru 37, of the Public Records of Brevard County, Florida;* * * *. [Emphasis supplied.]

29, 1967, and subsequent correspondence, *including Corps of Engineers requirements, dated April 29, 1966, optionors are required to construct a bulkhead and to dredge and fill portions of the property located in the Indian River.* \* \* \* [Emphasis supplied.]

While it is true that the building site plan indicated the need for warning lamps on the eastern border of the optioned property, it is necessary to keep in mind that the site plan was dated April 3, 1968, while the dredging was not done until June or July, 1968. The Post Office Department was merely prudent to require the navigational lamps. If the joint venture's remaining parcel of 250 feet x 162 feet were to remain submerged, the lamps would be needed. Much the same may be said with respect to the said building site plan's depicting of the Indian River as immediately adjacent to the rear boundary of the option land. At the time of the preparation of the site plan, the Post Office Department could only be sure of one fact, that all the land covered by the option would be filled.

Plaintiff also seeks to make much of paragraph 12 of the option, a letter dated September 2, 1967, to the Government from the joint venture which states, in relevant part:

> With reference to the May 29, 1967, Option to Purchase Land U. S. Government, please be advised that the property will be filled and you will be given all usable land. \* \* \*

Logically construed, this language simply means that all site property would be filled. Thus, all the option property would be usable. There is no statement at all with regard to whether the submerged property between the option property and the bulkhead line would be filled.

For the foregoing reasons we grant the defendant's motion for summary judgment. Plaintiff's motion for summary judgment is denied. The petition is hereby dismissed.