**Rosemarie DOSTAL, et al., Appellants,**

v.

**Alexander HAIG, Secretary of State of the United States, et al.**

**No. 79–2350.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1980.

Decided April 15, 1981.

Leonard C. Meeker, Washington, D. C., with whom Clifton E. Curtis, Washington, D. C., was on the brief, for appellants.

Howard S. Scher, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and Robert S. Greenspan, Atty., U. S. Dept. of Justice, Washington, D. C., were on the brief, for appellees. Dennis A. Dutterer and Royce C. Lamberth, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellees.

Before TAMM and MIKVA, Circuit Judges, and PHILIP NICHOLS, Jr.,* Judge, United States Court of Claims.

NICHOLS, Judge: **

Plaintiffs/appellants are seven persons residing in Berlin, Germany, of whom two are U.S. citizens and the remainder German nationals. They petitioned in the U.S. District Court for the District of Columbia seeking declaratory and injunctive relief against the then Secretary of State, Secretary of Defense, Secretary of the Army, and the Commanding General of the U.S. Army in Europe, all in their official capacities. With some correction by the court of broader language in the complaint not warranted by the specifics, plaintiffs alleged in substance that the defendants denied them judicial process that was their due when plaintiffs wished to contest a German official's conclusion that a housing project for American troops was in conformity with German zoning law. On cross-motions for summary judgment, U.S. District Judge Barrington D. Parker held that five of the plaintiffs, the five aliens, lacked standing to sue, that the question at issue was a political one unsuited for judicial resolution, and that all the plaintiffs were barred from bringing the suit either by laches or because as aliens they lacked standing to sue in an American court. He therefore entered an order dismissing the suit, and this appeal followed.

The controversy is inseparably connected with the peculiar nature of the U.S. mili-

tary presence in Berlin. The alleged constitutional violation is not directly the building of the housing project. That has been done by the West German government, which will continue to own it, and that government is not a party to this suit, nor are any of its officials. A German official, the Berlin Senator for Construction and Housing, determined that the construction of Dueppel Field would not violate German zoning law. When plaintiffs sought review of this decision in a German administrative court, the U.S. Mission in Berlin served notice that its consent to jurisdiction, which was required under the 1955 Declaration of Berlin and Occupation Laws Numbers 7 and 46, would not be granted. There was also on paper a United States Court for Berlin. Plaintiff Dostal tried to bring the case there, but U.S. Ambassador Stoessel notified U.S. Judge Stern that his jurisdiction did not include the case, and thereafter he effectively terminated Judge Stern's appointment, which existed only at his pleasure. Apparently there is no successor judge. It is not denied that local interests were consulted, even ad infinitum, but judicial review in the ordinary sense has not been had and apparently will not be available. Meanwhile, the project has been completed.

Thus, the only denial of due process alleged is that defendants prevented plaintiffs from litigating the legality of the project in any tribunal with jurisdiction over the actual builders. Defendants are not alleged to be impacting any right other than access to a court, any court. It is not denied that the U.S. has reserved the right to deny access in the case at bar if it has constitutional power to do so.

None of the plaintiffs allege they had any ownership interest in the land used for the project, Dueppel Field, which had been public property, or in any adjacent land. Dostal asserts that she leases a small plot elsewhere in the city which she would be hampered in using by dust and air pollution,

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

** Judge Philip Nichols, Jr., of the United States Court of Claims, sitting by designation.

during construction, and that heavy auto traffic would detract from enjoyment of her plot after the project is completed. The others allege no interest in any specific land, only general environmental injury: the project will prevent them from enjoying Dueppel Field which as an open area had previously been available to them and will preclude other, perhaps worthier, uses of the land. It seems fair to say that plaintiffs would sue, if they could, on environmental grounds, and would not allege legal injury to any specific liberty or property interest.

We hesitate to affirm on Judge Parker's threshold reasons: the difficult issues of laches, standing, and political question. Instead, we evaluate the merits of plaintiffs' fifth amendment claim. It is true that courts are normally reluctant to decide constitutional issues when the case can be disposed of on other grounds, such as laches, and that courts typically resolve standing and political question issues before reaching the merits of the case. Justice Frankfurter stated the proposition to be "[p]articularly when Congressional legislation is under scrutiny, every rational trail must be pursued to prevent collision between Congress and Court," concurring, in *United States v. Lovett*, 328 U.S. 303, 319, 66 S.Ct. 1073, 1080, 90 L.Ed. 1252 (1946). The reluctance to reach the merits of a constitutional issue loses much of its force, however, when the asserted constitutional right can be easily rejected, and it is unnecessary to strike down legislative or executive action. *See, e. g., United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1968); *Edwards v. Carter*, 189 U.S.App.D.C. 1, 580 F.2d 1055, *cert. denied*, 436 U.S. 907, 98 S.Ct. 2240, 56 L.Ed.2d 406 (1978); *Monett v. United States*, 190 Ct.Cl. 1, 419 F.2d 434 (1969), *cert. denied*, 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970). In this case, if we determine that plaintiffs have no constitutional right to a judicial forum, the order of dismissal is correct and may be affirmed, whatever we may think of laches, political question, or standing. Plaintiffs allege no other basis for recovery than their constitutional contention and we perceive no other.

■ The crux of plaintiffs' case seems to be the proposition that everyone has a constitutional right to litigate every kind of issue, and that the right is protected by the due process clause against any executive branch action, even if otherwise lawful, to frustrate that right, assuming only that claimants allege an interest that courts would allow as "standing" in other contexts. Plaintiffs make no effort to show that their direct suit against the housing project, if brought, would vindicate a liberty or property interest, those expressly protected by the due process clause, which reads:

No person * * * shall be deprived of life, liberty, or property, without due process of law * * *.

The Supreme Court, however, has held in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that the due process clause is available to strike down official action only to those who have a liberty or property interest to protect.

The applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate "property" or "liberty" interest within the meaning of the Fifth or Fourteenth Amendment. * * * [Justice Powell, concurring in *Arnett v. Kennedy*, 416 U.S. 134, 164 [94 S.Ct. 1633, 1649, 40 L.Ed.2d 15] (1974)]

In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the Supreme Court held that the expectations of Medicaid patients to continued enjoyment of a nursing home do not constitute "property" that entitles the patients to a hearing on decertification of the home. The expectations of the plaintiffs here for continued openness of Dueppel Field are less direct than those of the patients, it is clear. The lack of a "liberty" claim is self-evident. Our conclusion that the plaintiffs lack any liberty or property interest in the way in which Dueppel Field is used does not, of course, depend on whether the plaintiffs are U.S. citizens.

An equally fundamental point is that, when they refused to submit to the jurisdiction of a local tribunal, defendants were only exercising the historic immunities of military forces in friendly foreign countries. Many years ago, in *Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812), John Marshall held that military forces lawfully present in a foreign country are not subject to the jurisdiction of local courts. Since World War II, we have seen developed by diplomatic negotiation a network of express immunities for military contingents and of waivers thereof in some cases. Even older are the reciprocal immunities of diplomats, so shockingly violated in Iran. If our plaintiffs are right, it would seem that the due process clause is violated by the immunity enjoyed by foreign diplomats within the United States; where a foreign diplomat has been immune from suit even though, for example, he kills or injures a U.S. citizen while recklessly driving a car. Similarly the due process clause would prevent U.S. diplomats abroad from claiming immunities in foreign courts. The answer of course is that due process is not infringed by the proper enjoyment of immunities derived from lawful sources even if thereby a claimant is frustrated in prosecuting a lawful claim.

Pressed with this point during the oral argument, counsel for appellants urged that there was a fundamental distinction between agreed upon reciprocal immunities, such as those mentioned above, and the Berlin situation. The reciprocal element is absent here. The chain of authority for the immunity assertions here involved does not include, at least formally, any consent by the German government that might be imputed to its citizens. While it is clear the U.S. Government has not annexed the American sector of West Berlin, and also, that the war with Nazi Germany has been officially over since 1951, the position of the U.S. Force in West Berlin is in many respects that of an occupying force. It is practically "sole sovereign" in its sector, and exercises "supreme authority," local government institutions and courts being but its creatures.

The U.S. military, entering Berlin as conquerors, were immune from the jurisdiction of the courts of the conquered country, or would have been if any such courts had remained. *Coleman v. Tennessee*, 97 U.S. 509, 24 L.Ed. 1118 (1878). The end of hostilities did not change this situation because the civil authority of Berlin has never asserted jurisdiction over any of the allied forces occupying the city. In Marshall's analysis in the *Schooner Exchange* case, consent is only necessary to diminish pro tanto the jurisdiction of the host country's courts and prevent collision between them and the immunity the visiting armed forces carry with them.

We note further that Judge Stern (sitting as the United States Judge for Berlin by appointment of the Ambassador), held that he was bound by the U.S. Constitution's Bill of Rights to require a jury trial in the case of the German airplane hijackers then before the court. *United States v. Hans Detlef Alexander Tiede and Ingrid Ruske*, 86 F.R.D. 227 (March 14, 1979). He ordered that 500 unsuspecting Berliners be rounded up to make a venire for the trial to commence in May. The defendants were convicted and sentenced, and soon thereafter the Ambassador terminated the appointment and the United States Court for Berlin resumed its usual merely paper existence. We have consulted and made use of Judge Stern's scholarly account of the origin, history, and present status of the U.S. occupation of Berlin. We accept, *arguendo*, his attractive position that the Bill of Rights is fully applicable to govern the conduct of U.S. judges and officials in Berlin, respecting friendly foreign nationals, though not necessarily to the purely local German courts activated under U.S. authority. Moreover, the Court of Claims has held that the just compensation clause can be invoked to recover for a 1945 taking of property in Austria by the U.S. military. The taking occurred some months after the surrender, and the court held that Austria was not enemy territory on the relevant date. *Seery v. United States*, 130 Ct.Cl. 481, 127 F.Supp. 601 (1955). Our conclu-

sion, which in no way conflicts, is that assuming the Bill of Rights is fully applicable in Berlin, neither the due process clause of the fifth amendment, nor any other portion of the Bill of Rights prohibits the conduct complained in this case.

■ The rule that is decisive of this case is that the due process clause of the fifth amendment does not require U.S. officials to forgo normal and customary immunities, or to provide a judicial forum where individuals claiming injury by the operations of U.S. Armed Forces lawfully present in foreign countries may seek judicial redress, when such individuals are unable to allege impairment of liberty or property interests protected by the said clause.

We cannot dismiss the action as moot although the project is at or near completion. It is not moot here unless the hypothetical suit in the Berlin Administrative Court would be moot. Plaintiffs say without contradiction that that court still might be able to fashion some form of relief. It is a question of foreign law as to which we are not advised otherwise.

Accordingly, the dismissal of the action by the U.S. District Court is

AFFIRMED.