BAIRD CORPORATION

v.

The UNITED STATES.

No. 645–82C.

United States Claims Court.

Jan. 14, 1983.

John H. Tracy, Washington, D.C., for plaintiff; John R. Tolle, Washington, D.C., of counsel.

Sara V. Greenberg, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Major Howard Curtis, Dept. of the Army and Sidney H. Dvorkin, U.S. Army Communications-Electronics Command, Fort Monmouth, N.J., of counsel.

## OPINION

LYDON, Judge:

On December 13, 1982, plaintiff, Baird Corporation, filed an Application For Temporary Restraining Order, a Motion For Preliminary Injunction and a Complaint For Declaratory And Injunctive Relief. An Amended Complaint For Declaratory And

Injunctive Relief was filed on January 7, 1983. It is only necessary to determine the viability of plaintiff's Amended Complaint For Declaratory And Injunctive Relief.[1]

On November 8, 1982, the Communications-Electronics Command, Department of the Army (Command) issued Invitation For Bids No. DAAB07–83–B–E004 (IFB–E004) for 1,074 AN/VVS–2 night vision driver viewers. This item is used on military tanks and other armored military vehicles, and enables drivers of such vehicles to view at night with closed hatches in order to avoid exposure to enemy fire. The IFB was designated as a small business set-aside and Standard Industrial Classification (SIC) No. 3662 was assigned thereto. SIC No. 3662 meant that in order to qualify for award under IFB–E004, a bidder must not have over 750 employees. On November 15, 1982, plaintiff, who employed more than 750 persons, filed an appeal, as permitted under applicable regulations, with the Size Appeals Board (SAB), Small Business Administration requesting the SAB to rule that the assignment of SIC No. 3662 was erroneous. Plaintiff then requested the Command's contracting officer to delay bid opening until after a decision by the SAB. However, the contracting officer refused to do so, and the bids accordingly were opened on December 8, 1982. The bid opening revealed that plaintiff was the lowest bidder. However, aware of the contracting officer's intention to disqualify it for contract award because it was not deemed a small business since it employed over 750 persons, plaintiff instituted its pre-award suit in this court.

Plaintiff asks this court to assign SIC No. 3795 to IFB–E004. Under SIC No. 3795 a bidder must not have over 1000 employees, a condition plaintiff met. If IFB–E004 was so designated, plaintiff, as low bidder, deems itself entitled to contract award and

1. The parties agreed to maintain the *status quo* pending a decision on the merits of plaintiff's complaint and thus have rendered moot the necessity for a ruling on the motions for a temporary restraining order and/or a preliminary injunction. The Department of the Army agreed to withhold award of the contract in issue until January 17, 1983. The parties presented the matter to the court on motions for summary judgment, each of which was supported by affidavits and other documentation. A hearing and oral argument on the merits took place on January 12, 1983. The parties advised there were no disputes as to any material fact.

plaintiff asks the court to render a declaratory judgment to this effect. Alternatively, plaintiff asks this court to enjoin the Command to withdraw or cancel IFB–E004 and to reissue it in conformance with applicable regulations, which, under plaintiff's view, would mean that IFB–E004 could not be issued as a small business set-aside. In support of its relief requests, plaintiff contends first, that the Command erroneously assigned SIC No. 3662 to IFB–E004 and that SIC No. 3795 was the proper classification to assign to IFB–E004; and second, even assuming SIC No. 3662 was properly assigned, the Command violated Defense Acquisition Regulation (DAR) 32 C.F.R. § 1–706.1(j)(ii) in authorizing IFB–E004 as a total small business set-aside. After careful consideration of the submissions of the parties and oral argument relative thereto, it is concluded that plaintiff is not entitled to the relief sought.

I.

The jurisdiction of this court over pre-award bid protests is of recent vintage. See Pub.L. No. 97–164, 97th Cong., 96 Stat. 25, 40, amending 28 U.S.C. § 1491, effective October 1, 1982. This court's predecessor, the United States Court of Claims, had no such jurisdiction. Accordingly, it is appropriate to examine and consider for application herein the standards and guidelines developed by other federal courts which had jurisdiction to deal with the troublesome problem of resolving on short notice bid protests. After review of case law on the subject of bid protests, it is concluded that the following standards and guidelines should be followed in considering the pre-award issues now before the court for resolution.

Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations. *Princeton Combustion Research Laboratories, Inc. v. McCarthy*, 674 F.2d 1016, 1021–22 (3d Cir.1982); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301, 1306 (D.C.Cir.1971). Judicial intrusions into the procurement process are generally limited, circumspect and infrequent, *Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co.*, 446 F.2d 261, 264 (5th Cir.1971), as they should be. *M. Steinthal & Co. v. Seamans, supra*, 455 F.2d at 1300. *See also Allen M. Campbell Co. v. United States*, 199 Ct.Cl. 520, 522, 467 F.2d 931 (1972) (Nichols, J., concurring). Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence. *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir.1964). Even in the exercise of sound judicial discretion, in the absence of overriding public interest considerations, the court should refuse to look favorably on declaratory or injunctive relief requests in pre-award bid protest actions, and should not overturn any pre-award procurement determination unless the aggrieved bidder establishes that there was no rational basis for the agency's determination. *M. Steinthal & Co. v. Seamans, supra*, 455 F.2d at 1301.[2]

2. In bid preparation cost cases, post-award damage suits, the Court of Claims utilized as criteria for reviewing the challenged propriety of administrative procurement determinations the standards of "arbitrary and capricious" actions, or "bad faith" on the part of procurement officials, or the lack of a "reasonable basis" for the administrative determination. Further, the degree of proof necessary to overturn procurement determinations was related by the court to the amount of discretion vested in the administrative official or body whose determination challenged. Thus, the more discretion that underscored a challenged determination, the heavier the burden of proof the disappointed bidder had to carry. *Keco Industries, Inc. v. United States*, 205 Ct.Cl. 566, 574, 492 F.2d 1200, 1203–04 (1974). Under any of the standards discussed above, pre-award or post-award, plaintiff carries a heavy burden when it seeks to have the court intervene into the procurement process.

With these review standards in mind, the issues framed by the parties may now be addressed.

### A. The SIC Code Issue

Plaintiff is the original designer of the AN/VVS–2 night vision driver viewer, the procurement item in question. Under a 1973 contract, plaintiff designed this item and produced 15 of them for laboratory and field evaluation. The first production contract for this item, was in 1975. Since 1975, and up to the present day, whenever a SIC number was assigned to a production contract for this item, SIC No. 3662 was so assigned.[3] It appears that prior to 1982, plaintiff and one other firm, Varo, were the only two producers of this item. Plaintiff claims it had delivered some 10,000 units of these items and that Varo has produced some 1000 units. Most of the AN/VVS–2 items produced were used on military tanks, with less than 10 percent of said items used on military vehicles other than tanks, such as Army personnel carriers and Marine Corps amphibian vehicles. There is no question but that plaintiff was a contractor that met its delivery schedules and produced a quality item.

Plaintiff's claim is that since most of these AN/VVS–2 items are used on military tanks, SIC No. 3795 is the appropriate SIC to use. SIC No. 3795 is defined in the SIC Manual under Transportation Equipment as "Tanks and Tank Components—Establishments primarily engaged in manufacturing or assembling complete tanks, and specialized components for tanks. Establishments primarily engaged in manufacturing military vehicles other than tanks are classified in Group 371 and tank engines in Industry 3519."[4] SIC No. 3662 is defined in the SIC Manual under "Radio and Television Transmitting, Signaling and Detection Equipment and Apparatus" and covers "Establishments primarily engaged in * * * (3) electronic field detection apparatus, light and heat emission operating apparatus, object detection apparatus, and navigational electronic equipment * * *." Among the equipment covered by SIC 3662 are detection apparatus, electronic and magnetic field and light and heat detection apparatus.

When the major components of the AN/VVS–2 item and the nature of said item are analyzed, it cannot be said that it was unreasonable and irrational to assign it SIC No. 3662. The components of the AN/VVS–2 are the government furnished

3. This is a factor worthy of note since it indicates that SIC No. 3662 was not assigned just for this procurement. Assignment of this SIC number to contracts involving AN/VVS–2 items was thus one of long standing practice. Plaintiff notes that it was the primary producer and supplier for the government of the item in question since 1975 and was well aware that its production contracts, if they carried a SIC number, carried SIC No. 3662. Plaintiff seeks to diffuse this factual awareness by noting that it was unconcerned with this assignment since it did not affect its ability to receive the contracts, presumably because the item was not previously the subject of a small business set-aside or because plaintiff during that period had less than 750 employees. The point is, however, that assignment of SIC No. 3662 was not a precipitated act, or an act designed for achievement of a questionable purpose. It manifested instead the implementation of a regular, established, and unbiased practice relative to the procurement of the AN/VVS–2 items.

4. It should be noted that tank engines, a vital tank component, is classified as SIC No. 3519.

Thus, it seems clear that merely because an item is used primarily on a tank does not mean, which is the essence of plaintiff's position, that it must be classified as SIC No. 3795 which covers tanks and tank components. As was noted by the Size Appeals Board in its December 20, 1982, decision in this case: "The end use of a product does not govern the industry into which it is to be classified * * * instead the SIC code should be the code which best describes the nature of the product." Here, the AN/VVS–2 item clearly fits more comfortably in the SIC No. 3662 industry classification than it does in the SIC No. 3795 classification. Indeed, the SAB noted that this item could also reasonably fit under SIC No. 3832 which covers "Optical Instruments and Lenses," a classification not mentioned by either party. The point here is that classification of an item is a discretionary act and reasonable minds may well disagree on what Code or SIC No. an item should carry. Since the use of SIC Code 3662 was reasonable there is no basis for court intervention to change it.

image intensifier ($1,200 estimated cost), and the bidder furnished fibre optics magnifier, objective lenses assembly, eye piece assembly, other optical, housing mount (estimated cost $1,700). The image intensifier converts as well as intensifies the image. The fibre optics magnifier magnifies the image produced by the image intensifier and is not needed on daytime viewers or periscopes.[5] The materials at hand establish that the contracting officer complied with all applicable regulations, see, e.g., 13 C.F.R. § 121.3–1(b)(5) (1982) in determining the item or product classification in issue.

As indicated previously, plaintiff appealed to the SAB contending that IFB–E004 should be classified as SIC No. 3795. The SAB, in a decision dated December 20, 1982, upheld the contracting officer's determination that SIC No. 3662 was properly applied to IFB–E004. This determination by SAB is entitled to considerable weight since it "incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme * * *." *Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co., supra,* 446 F.2d at 265. Further, the court must recognize and give due weight to the discretion which should be accorded SAB relative to the application of a technical and often esoteric manual used to classify procurement items into industry categories. *See M. Steinthal & Co. v. Seamans, supra,* 455 F.2d at 1301. The court, as a general rule, is, and properly should be, reluctant to interfere with the procurement process, and this is especially true in this case where the SAB has made a

SIC determination that is neither irrational or unreasonable. Since it is neither irrational nor unreasonable, the SAB determination must be upheld. *Princeton Combustion Research Laboratories, Inc. v. McCarthy, supra,* 674 F.2d at 1021.

Plaintiff has failed to establish that SIC No. 3662 was improperly assigned to IFB–E004.

**B. The Small Business Set-Aside Issue**

Plaintiff argues, alternatively if the SIC issue is decided against it, that the Command's set-aside of IFB–E004 for small business purposes was improper and thus cancellation of the solicitation and readvertisement of the procurement for bidding by both large and small businesses is required. It asks the court to issue an injunction to this effect.

As indicated earlier, intervention, by injunction, into the pre-award procurement process is a drastic remedy which should not take place unless there is clear and convincing evidence supporting such a course of action. *Goldammer v. Fay, supra.* The court's task is made more difficult here because this issue surfaced at a very late date in the proceedings. It was not set forth in plaintiff's motions and complaint filed on December 13, 1982. The issue surfaced superficially in the amended complaint plaintiff filed on January 7, 1982, after the SAB had rejected on December 20, 1982, its attack on the SIC code assigned IFB–E004, was expanded somewhat in the brief filed by plaintiff on January 11, 1983, and was the subject of probing at the oral argument on January 12, 1983.

---

5. Daytime viewers or periscopes have been assigned SIC No. 3795 by the Army Material Readiness Command. These periscopes are also used on tanks and other armored vehicles. Plaintiff argues that since another procuring agency of the Department of the Army uses SIC No. 3795 for daytime periscopes, this SIC number is also appropriate for night-time viewers, the item herein classified as SIC No. 3662. In disposing of this argument, the Size Appeals Board noted that the image intensifier is properly classified as a light detection apparatus and that the magnifier is directly associated with the use of the intensifier. These two com-

ponents, the Board noted, directly account for $1,800 of the $2,900 estimated cost of the whole item assembled by the bidder. These components are not part of the daytime periscopes. The Board also noted that the AN/VVS–2 item has a major electronic component, that it processes light and that it or devices performing similar night vision functions are used on weapons other than tanks. Thus, a rational and reasonable difference exists between the daytime periscope and the night vision driver which supports a different industry classification by reasonable minds of different procurement agencies.

■ Further, plaintiff never obtained a ruling or decision from those agencies with expertise and authority to rule on the validity of small business set-aside, the General Accounting Office and the SBA, even though the situation should have been known, if it was not so known, to plaintiff at least by September 1982. Plaintiff did protest to GAO and appealed to SBA on the SIC code issue. It could have and should have presented the present issue to these agencies at that time. Determinations by those agencies would have been extremely helpful in this difficult area. *See M. Steinthal & Co. v. Seamans, supra,* 455 F.2d at 1298. In short, the record and the briefing on this issue are not as developed and informative as one would like. Any shortcomings in this regard must be laid at the feet of plaintiff who has the burden of presenting clear and convincing evidence in support of the drastic relief it seeks.

Plaintiff argues that the Command violated Defense Acquisition Regulation (DAR) 32 C.F.R. § 1–706.1(j)(ii) (1981), which prohibits a total small business set-aside "when one or more large business Planned Emergency Producers of the item desires to participate in the acquisition." Plaintiff maintains that because it qualifies as a Planned Emergency Producer (PEP) under DAR 32 C.F.R. § 1–2201(d), defendant under existing circumstances improperly issued IFB–E004 as a total small business set-aside.

Plaintiff's position, however, is not persuasive. Not only does plaintiff fail to qualify as a PEP, as to the procured item in question, but the available facts in this case suggest that the set-aside was partial rather than total, thereby rendering § 1–706.1(j)(ii), *supra,* inapplicable, in any event. It is not disputed that this section does not apply to partial set-asides.

First, with respect to plaintiff's alleged PEP status, the applicable regulation states:

(d) *Planned Producer*—An industrial firm which has indicated its willingness to produce specified military items in a national emergency by completing an Industrial Preparedness Program Production Planning Schedule (DD Form 1519) (DAR) 32 C.F.R. § 1–2201(d) (1981).

In determining whether plaintiff qualifies under the aforementioned regulation it is important to note that there are three different types of night driver viewers. The original version of the night driver viewer AN/VVS–2, which was designated National Stock Number 5855–00–629–5278, is no longer produced. It has been replaced by three other versions: (1) AN/VVS–2(v)–1A (National Stock Number 5855–01–096–0871); (2) AN/VVS–2(v)–2A (National Stock Number 5855–01–096–0872); and (3) AN/VVS–2(v)–3 (National Stock Number 5855–01–105–7793).

■ Here, DD Form 1519–2, one of the forms basic to obtaining a PEP status, contained the following item description: "Night Driver's Viewer AN/VVS–2, 5855–00–629–5278." This, however, was not a description of the procured item in this case. The solicitation in question sought to procure a different type of Night Driver Viewer, namely AN/VVS–2, 5855–01096–0871. Thus, plaintiff was not a PEP as to the procured item in question because it did not specify this item in the DD Form 1519 as required by 32 C.F.R. § 1–2201(d) (1981).

Plaintiff argues that it does qualify as a PEP on the ground that in Part 1, page 2 of Form 1519 it broadly described the three different types of Driver Viewers by handwriting in the "item" box "AN/VVS–2" and typing in the "item" box "(MY–9644) UV GFE." It is plaintiff's position that this sketchy and cryptic description entitles it to planned producer status for all three types of night driver viewers, including the one in question. This, however, is not the case. In *Kings Point Industries, Inc.,* 47 Comp.Gen. 462, 466 (1968) the General Accounting Office (GAO) addressed the precise question raised here and held that it could "not interpret the terms of the executed [planned producer] agreement as making you a planned producer or supplier of any articles other than those *clearly identified therein by Federal Stock Numbers."* *Id.* at 466. (Emphasis added.) There is not

only logic but practicality to such a holding. It should not be left to a PEP supplier to determine, on its own, which item the government wants as an emergency item. Moreover, adoption of plaintiff's approach would enable it to preclude the military from setting aside for small business purposes the procurement of any AN/VVS–2 items. Such a situation would be contrary to certain regulations implementing the concern of Congress for small business firms. *See* note 7, *infra.*

■ It must be concluded here that plaintiff does not qualify as a planned producer for the item in question, Night Driver Viewer AN–VVS–2, 5855–01–096–0871, because it did not clearly identify said item in Form 1519 by its Federal Stock Number.[6] Plaintiff's argument that it merely had to "express an interest" in a procurement and execute DD Form 1519 in order to qualify as a "planned producer" fails in light of the aforementioned decision by the GAO. The GAO decision, which is squarely on point, should be given due weight and deference by this court given the GAO's long experience and special expertise in such bid protest matters. *See Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1313–16 (D.C.Cir. 1971); *M. Steinthal & Co., Inc. v. Seamans, supra,* 455 F.2d at 1304–05.

Accordingly, because plaintiff cannot be considered a PEP as to the procured item in question under DAR 32 C.F.R. § 1–2201(d) (1981), plaintiff cannot successfully claim that defendant violated DAR 32 C.F.R. § 1–706.1(j)(ii) (1981).

■ In addition to holding that plaintiff is not a planned producer as to the item in question, it is also concluded that, in view of the history of this procurement, the set-aside can reasonably be deemed to be "par-

tial" rather than "total" and, thus, not violative of DAR 32 C.F.R. § 1–706.1(j)(ii). Such a holding, on an issue that is lacking in full development and briefing, is justified since clear and convincing evidence is lacking to show that such a holding is unreasonable or irrational. Since plaintiff failed to make any such showing, its request for injunctive relief must be denied. *See Princeton Combustion Research Laboratories, Inc. v. McCarthy, supra,* 674 F.2d at 1021–22; *M. Steinthal & Co. v. Seamans,* 455 F.2d at 1306.

■ Plaintiff's argument that the set-aside was total rests exclusively on the fact that on DD Form 1707, dated December 8, 1982, and entitled "Information to Offerors," a box is checked indicating "Set-Aside (This is a *100%* set-aside for (X) Small Business * * *)" Upon review of the sketchy history and background of the procurement of this specific night driver viewer, it seems apparent that plaintiff's bald characterization of the set-aside as "total" is too narrow and restrictive. In considering pre-award bid protest litigation, the court has a responsibility to consider the totality of the procurement process in its review of agency action. *See M. Steinthal & Co. v. Seamans, supra,* 455 F.2d at 1298.

■ A total procurement of some 2,879 AN/VVS–2 units was planned by the Command for 1982 of the specific night vision devices at issue in this case. Originally, the total 1982 procurement of the devices in issue was to be implemented through the use of two solicitations, one open to competition for both large and small businesses for 1,522 units (IFB–E–034) (plaintiff was awarded this contract), and the second as a partial set-aside limited to small businesses for 1,357 units (IFB–E033).[7] As a result of

---

6. Plaintiff's argument that the Federal Stock Number enumerated in DD 1519–2, which differs from the procured item in question, should not control since that portion of Form 1519 was never signed by plaintiff, misses the point. What is significant, and dispositive of this issue, is that nowhere on Form 1519 did plaintiff clearly identify by Federal Stock Number the specific item in question. *See Kings Point Industries, Inc.,* 47 Comp.Gen. 462, 466 (1968).

7. Noteworthy is the Congressional intent that the government furthers the interest of small businesses whenever possible. 15 U.S.C. § 631; *see also Otis Steel Products Corp. v. United States,* 161 Ct.Cl. 694, 697, 316 F.2d 937, 938, 939 (1963). In this case, the contracting officer in her affidavit states that "[b]ifurcated solications were issued in order to further the goals directed by Defense Acquisition Regulation (DAR) § 1–702 to develop small business

bid protests and disputes this second solicitation was cancelled and subsequently reissued, but bifurcated into two solicitations. To satisfy the military's most urgent needs an emergency non set-aside solicitation for 955 units was issued. The other solicitation remained a small business set-aside, this one for 1074 units. Plaintiff was the successful bidder on the emergency (IFB–E003) solicitation; the second solicitation, the small business set aside, is the subject of this litigation. It is to be noted that the IFB–E004 set aside, the solicitation in issue, was the direct decedent of the original partial set aside, (IFB–E033).[8]

In view of this history of the total procurement of the night vision devices in question, it is reasonable to conclude that the set-aside in question was a partial set aside which was part of a larger bifurcated procurement process. Therefore, since the set-aside in question is deemed "partial" rather than "total," the regulation relied on by plaintiff, 32 C.F.R. § 1–706(j)(ii), is inapplicable.

Giving due consideration to the submission of the parties, the limited role of the court in pre-award bid protest litigation, and the hearing on the matter, it is concluded that plaintiff's claim for declaratory and injunctive relief is denied, with the complaint to be dismissed.

---

participation in military procurement." Accordingly, the applicable regulations should be read in the light most favorable to the interests of small businesses.

8. At the hearing on January 12, 1983, plaintiff also charged that the contracting officer failed to follow applicable regulations in January 1982 or in November 1982 for partial set asides for the AN/VVS–2 item, citing 32 C.F.R. § 1.706.6 (1981). Plaintiff's presentation on this point was sketchy and unpersuasive. It failed completely to rebut the presumption that the contracting officer properly discharged her duties relative to the procurement in question. Accordingly, the contracting officer may be held to have properly complied with all applicable regulations in the partial set asides she made in this procurement. *See Librach and Cutler v. United States,* 147 Ct.Cl. 605, 614 (1959) and cases cited therein.