BIG BUD TRACTORS, INC.

v.

The UNITED STATES.

No. 650–82C.

United States Claims Court.

March 22, 1983.

David W. James, Jr., Washington, D.C., for plaintiff. E. Grey Lewis, Washington, D.C., of counsel.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Major Kevin Flanagan, Dept. of the Army, Washington, D.C., of counsel.

## OPINION

WOOD, Judge:

This case comes before the court on plaintiff's motion for a preliminary injunction, and defendant's "motion to dismiss or in the alternative for summary judgment, and defendant's opposition to plaintiff's motion for a preliminary injunction," filed February 23, 1983.

Upon a careful consideration of the pleadings, the exhibits filed in this case, and the arguments of the parties, it is concluded that plaintiff is not entitled to injunctive (or declaratory) relief, and that defendant's motion for summary judgment dismissing the complaint must be granted.

By way of background, on December 14, 1982, plaintiff filed a complaint for declaratory and injunctive relief, together with a motion for a temporary restraining order and a motion for a preliminary injunction, concerning a request for proposals (described below) for the procurement of 1047 scrapers and related items. The complaint alleged that plaintiff had timely submitted a proposal in response to that request, and that defendant's actions in connection with the proposed procurement were in several specified respects illegal, arbitrary, capricious, an abuse of discretion and violative of law and regulation. Plaintiff asked that defendant be restrained from making an award pursuant to the request for proposals without "first eliminating" the purported "deficiencies" alleged.

Following conference calls with counsel for the parties on December 14 and 15, 1982, the court called upon the Comptroller General of the United States to render a decision upon a bid protest theretofore submitted by plaintiff to the Comptroller General, and to file such decision with the Clerk by January 31, 1983.[1] Counsel for defendant represented to plaintiff and the court that (absent exigent circumstances) award of any contract pursuant to the request for proposals here in issue would be withheld until at least fifteen (15) days after the filing of that decision, thereby mooting plaintiff's motion for a temporary restraining order.[2]

On February 4, 1983, the Comptroller General duly filed with the Clerk a decision reflecting his denial of plaintiff's bid protest. On February 7, 1983, in implementation of an agreement of the parties, a single trial or hearing in this matter was set to commence February 24, 1983, with a pretrial conference scheduled for February 22, 1983.[3] Defendant's answer to the complaint was filed February 14, 1983.

At the February 22, 1983, pretrial conference, defendant informed plaintiff and the court that it intended to file a dispositive motion herein. An order cancelling the trial, setting forth a new government representation that award of any contract pursuant to the request for proposals would be withheld until after a ruling by the court on defendant's dispositive motion, and establishing an expedited briefing schedule, was thereupon filed. Defendant's dispositive motion was filed the following day.

---

1. The time for filing decision was subsequently extended to February 7, 1983.

2. On December 15, 1982, orders setting forth defendant's representation, the call on the Comptroller General, a time schedule for trial or hearing (if necessary), and a direction for specified pretrial preparations (should trial or hearing be necessary) were filed.

3. RUSCC 65(a)(2) provides in pertinent substance that before the commencement of the hearing of an application for a preliminary injunction, the court may order trial of the action on the merits to be advanced and consolidated with the hearing of the application.

In that motion, defendant contends that the court lacks jurisdiction over plaintiff's claim; that plaintiff lacks standing to prosecute the claim asserted in the complaint; and that on the material facts concerning which there is no genuine dispute defendant is in any event entitled to summary judgment as a matter of law. Plaintiff contends in essence that its "implied 'contract claim' is squarely within" the purview of section 1491(a)(3), Title 28, United States Code, as added by section 133(a), Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25, 39–40 [4]; that plaintiff has standing to maintain this action; and that for a number of reasons defendant is not entitled to summary judgment.

## I

Unless otherwise indicated, the facts stated herein are not in any dispute.

On August 13, 1982, the United States Army Tank-Automotive Command (TA-COM) issued a request for proposals (RFP DAAE07–82–R–5388, hereinafter RFP 5388) covering the procurement, by negotiation, of 1,047 scrapers, described as "Scraper, 14–18 Cubic Yard Minimum Struck Capacity, Open Bowl, Single Diesel Engine Driven * * *," and related items, over a five-year period.[5] The proposed procurement was and is the culmination of prolonged studies and decisions looking toward replacement of the Department of the Army's existing fleet of earthmoving equipment.[6]

RFP 5388 provides in part that the scrapers are to conform to Military Specification MIL–S–53000(ME) (MILSPEC 53000), 18 December 1981, with some stated modifications. MILSPEC 53000 calls for a self-propelled commercial open bowl model scraper having "one diesel engine, four pneumatic tires, two axles, two single driving front wheels, two single non-driving rear wheels, and articulated steering," with "limited self-loading" capability. RFP 5388 further contains a "Product Experience Qualification" requirement.[7]

RFP 5388 does not include any life cycle cost criteria for the evaluation of offers.[8] In pertinent substance, RFP 5388 provides that evaluation of each offer determined to be technically acceptable will be made on the basis of price, and that the award "shall" be made to the offeror in the competitive range "who has submitted the lowest evaluated total price * * * " (and, of course, an otherwise acceptable technical proposal). A government exhibit explicitly reflects—and plaintiff does not dispute—

---

4. Section 1491(a)(1) confers jurisdiction on this court over "any claim against the United States founded * * * upon any express or implied contract with the United States * * *."

Section 1491(a)(3) provides in part that:

"To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief."

5. RFP 5388 reflects the following acquisition schedule:

Fiscal Year 1982 – 168 each
FY 1983 – 129 each
FY 1984 – 234 each
FY 1985 – 267 each
FY 1986 – 249 each

6. While the total cost involved in the proposed procurement is unclear, it appears to be on the order of magnitude of $250,000,000 or so.

7. "The scraper shall be the latest model of the contractor's standard product for which substantial quantities have demonstrated proven performance in commercial use for the same or similar application for a period of at least one year prior to the date established for submission of the proposal. * * *."

8. Defense Acquisition Regulation (DAR) § 1–335, Defense Acquisition Circular No. 76–24, 28 August 1980, provides in part as follows:

"The Life Cycle Cost of a system or item of equipment is the total cost to the Government of acquisition and ownership of that system or item of equipment over its life. It includes the cost of development, acquisition, operation, support, and where applicable, disposal. Since the cost of operating and supporting the system or equipment over its useful life is substantial and, in many cases, greater than the acquisition cost, it is essential that such costs be considered in development and acquisition decisions in order that proper consideration can be given to those systems or equipments that will result in the lowest life cycle cost to the Government."

that, in the decisional process leading to the promulgation of RFP 5388, the Army considered the possibility of including, but decided not to include, a life cycle costs evaluation factor in the RFP. On this record, it cannot be said that that decision has no rational basis.[9]

On November 15, 1982, within the time permitted by RFP 5388 for the submission of bids, plaintiff submitted a proposal to furnish earthmoving equipment to defendant. That proposal is, admittedly, not responsive to the literal terms of RFP 5388 in two separate respects.

First, plaintiff offers to supply a proposed piece (or, more precisely, two pieces) of equipment, having three, rather than only two, axles. Plaintiff's proposal covers equipment consisting of a tractor, with two axles, and a separate scraper, with one axle. Secondly, plaintiff offers to supply a tractor-scraper never actually built by plaintiff to the specifications incorporated in RFP 5388, and therefore not satisfying the product experience qualification requirement set forth in note 7, *supra*.[10]

Finally, there is no real question but that plaintiff's bid prices for its tractor-scrapers *per se* are (in the words of the Chief, Material Handling and Equipment Branch, TACOM) not only substantially but indeed "remarkably higher than all other offers received and could not conceivably be improved to a point where they would become the most acceptable prices."[11] Plaintiff says it cannot "verify," but does not dispute, that statement, under oath, as made. *Cf. Pacific Far East Line, Inc. v. United States,* 206 Ct.Cl. 378, 513 F.2d 1355 (1975); *Blackhawk Heating & Plumbing Co. v. Driver,* 433 F.2d 1137, 1141 (D.C.Cir.1970). Its response is, rather, that defendant's failure to adjust the bids of its competitors by an "equalization cost factor" before comparing those bid prices with plaintiff's is "patently irrational." It is clear on this record that absent a holding defendant *must* employ some sort of "equalization cost factor" when comparing plaintiff's proposal with all others, plaintiff's price could not conceivably become the "most acceptable" one.[12]

Parenthetically, it should perhaps be noted at this point that the two-axle requirement stated in MILSPEC 53000, and incorporated in RFP 5388, is challenged here. Plaintiff vigorously asserts both that its three-axle equipment can meet the performance requirements of MILSPEC 53000 (as well as all of the Army's needs), and that the two-axle requirement unduly restricts competition. In connection with this aspect of the facts, the record is clear that during the prolonged period of evaluation

9. Plaintiff does not really, and in any event could not validly, contend that failure to include a life cycle cost evaluation factor in RFP 5388 amounts, in and of itself, to a "clear and prejudicial violation of applicable statutes or regulations," *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973), and there is no basis whatever, particularly in light of the terms of RFP 5388, for concluding that the Army's decision in this respect "had no rational basis * * *." *Ibid.* Upon the basis of an affidavit in the record, however, plaintiff does assert that in comparing its bid price with the bid prices of other bidders on RFP 5388, "one-third of the allocable pusher-tractor ownership and operating costs * * *" should be added "to the prices proposed by offerors of push-loaded scrapers." This contention is discussed hereinafter.

10. According to plaintiff, however, it can supply a tractor-scraper containing components that "either require no redesign whatever, or minimal product modifications [said to be permissible as a matter of law], or are standard optional items [said to be permissible according to the terms of RFP 5388] * * *." This contention is discussed hereinafter.

11. By letter of December 17, 1982, plaintiff was so notified; the letter added that plaintiff's equipment did not meet the product experience qualification requirement of RFP 5388, that its proposal failed to fall within the competitive range, and that further negotiations with plaintiff were not contemplated.

12. An affidavit by the Chief, Material Handling and Equipment Branch, TACOM, reflects that competition pursuant to RFP 5388 is "excellent," that (plaintiff's offer aside) offers from four leading manufacturers of construction equipment have been received, that prices offered are "remarkably lower than expected," and that, even should plaintiff's proposal be reduced by one-third, "it would not be in the competition."

leading to the promulgation of RFP 5388, the Department of the Army carefully and extensively considered the question of the configuration of the earthmoving equipment it wished to procure in the future. As a result of that extensive evaluation process, the Department concluded that only a two-axle scraper would meet its needs.

■ On this record, it cannot be found that the Department of the Army's decision as to how best to satisfy its scraper needs in this respect was without any "rational basis." *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973). To the contrary, the record reflects more than adequately the underlying bases for the Army's decision to procure a fleet of commercial two-axle, 14–18 cubic yard, self-propelled scrapers.

As a practical matter, because of that decision plaintiff's three-axle equipment is manifestly unable to compete effectively here, insofar as the Army is concerned, because that equipment does not comport with the needs perceived by the Army and stated in RFP 5388. Even though the decision does "restrict" competition, *for plaintiff,* it by no means follows that the specification embodying the Army's decision is unduly restrictive of competition in general. That question, however, need not be explored at this point, for reasons which will soon become clear.

## II

Defendant vigorously asserts that plaintiff's complaint should be dismissed pursuant to RUSCC 12(b) for failure "to state a claim upon which relief can be granted within the jurisdiction of this Court," urging (a) that the court lacks jurisdiction under section 1491(a)(3) over the claim assert-

ed, and (b) that plaintiff lacks standing to pursue the purported violations of regulations here.

In response to the government's section 1491(a)(3) jurisdictional argument, plaintiff asserts that its action is "squarely within the jurisdiction the Congress intended and established in" section 1491(a)(3). With respect to standing *vel non,* plaintiff asserts that it is "within the zone of interests protected by 10 U.S.C. § 2301 and has standing to sue," in consequence of what it terms "loss of the opportunity to have its proposal considered fully and fairly upon valid evaluation and award criteria."

Section 1491(a)(3) is of relatively recent vintage. The precise metes and bounds of its jurisdictional grant, at least in terms of the issues here relevant, have not been sharply drawn thus far,[13] and what has been said respecting jurisdiction in the preaward "contract claim" area can scarcely be deemed authoritative in any event. Moreover, the effect properly to be accorded the exceedingly amorphous doctrine of "standing" (in the traditional sense of that concept) in this court, in cases such as this, is far from clear and may be inextricably intertwined with the scope to be afforded section 1491(a)(3).

Fortunately, a dangerous expedition into these treacherous areas, under the enormous time pressures imposed on both counsel and the court by the necessity for immediate if not precipitous decision, can and will be deferred. *Small v. United States,* 200 Ct.Cl. 11, 17–18, 470 F.2d 1020, 1024–25 (1972); *Monett v. United States,* 190 Ct.Cl. 1, 5, n. 4, 419 F.2d 434, 436 (1969), *cert. denied,* 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970).[14] A separate, narrower, govern-

---

**13.** *See, e.g., P. Francini & Co., Inc. v. United States,* 2 Cl.Ct. 1 (Cl.Ct.1983) (WHITE, S.J.); *Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136 (Cl.Ct.1983) (KOZINSKI, C.J.); *Baird Corp. v. United States,* 1 Cl.Ct. 662 (Cl.Ct.1983) (LYDON, J.); *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43 (Cl.Ct.1982); *S–M–M–S v. United States,* 1 Cl.Ct. 188 (Cl.Ct.1982) (YANNELLO, J.); *Grimberg v. United States,* 1 Cl.Ct. 253 (Cl.Ct.1982)

(WILLI, J.), on appeal 702 F.2d 1362 (C.A.Fed., argued *en banc* 1983).

**14.** Defendant urges that section 1491(a)(3)'s scope is sharply limited. It says that for jurisdiction to exist, "there must be an implied 'meeting of the minds' that the Government will consider the plaintiff's bid or proposal fairly on the merits." In light of *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir. 1970) and its progeny, the legislative history of

ment argument is well founded, and dispositive. Assuming both that the court has jurisdiction to decide the complaint here made, and that plaintiff has "standing" to press it, in the traditional sense of that word [15], defendant correctly asserts that on this record plaintiff is not entitled to any injunctive or declaratory relief.

### III

To challenge a government procurement decision successfully, a bidder who alleges that it has been adversely affected by that decision must show "either that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Ltd., v. Warner, supra; see* also *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301–02 (D.C. Cir.1971); *Baird Corp. v. United States*, 1 Cl.Ct. 662 (Cl.Ct.1983) (LYDON, J.). In passing upon such a challenge, the court should accord all due respect to the "wide discretion accorded to contracting officers in their evaluation of bids and in their application of procurement regulations." *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1272 (5th Cir.1978); *see* also *Baird Corp. v. United States, supra.* The scope of judicial "review of an agency's pre-award procurement decision is, and should be, extremely limited in scope." *Baird Corp. v. United States, supra,* 1 Cl.Ct. at 664.

In essence, the government argues that notwithstanding plaintiff's allegations of "injury in fact," on the record before the court, and on the facts concerning which there is no material dispute, plaintiff has wholly failed to demonstrate any damage to

it in consequence of any even arguably valid allegations of impropriety by defendant. Defendant says, rather, that the unacceptability of plaintiff's proposal is attributable to two fundamental facts.[16] The first is plaintiff's inability to comply with the product experience qualification requirement of RFP 5388. The second is plaintiff's bid price, one so much higher than the other offers submitted to defendant in response to RFP 5388 that plaintiff is not, and even with a marked reduction in bid price still would not be, "in the competition." Defendant urges that while plaintiff "cannot be awarded the contract," it is plaintiff's, and not defendant's fault, and that, accordingly, plaintiff is entitled to no relief.

In its brief plaintiff contended, and at oral argument it reiterated, that summary judgment for defendant is inappropriate because of the probable or actual existence of genuine factual disputes asserted to be material. Plaintiff has listed a considerable number of purported factual disputes alleged to fall within that category.

On a discriminating analysis of plaintiff's arguments and the record, the contention lacks merit. Applying the appropriate, narrow, standard for scrutiny of the procurement decision under attack to the record before the court, the asserted factual disputes pertain only to areas and issues which need not here be decided. They do not in any way preclude a grant of summary judgment on other issues and undisputed facts.

### A

Plaintiff tacitly, but necessarily, concedes that the tractor-scraper equipment it proposes to furnish to defendant has never been manufactured in the size called for by

---

section 1491(a)(3), and the decisions of this court cited in note 13, *supra,* that notion presents difficult, and troubling, questions. *E.g.,* if this court's preaward jurisdiction is exclusive, as *Grimberg v. United States, supra,* indicates, did Congress narrow, intentionally or otherwise, avenues of relief that had theretofore been available to prospective government contractors in the district courts? Is the government's position here inconsistent with the cited decisions?

15. *See Caci, Inc.—Federal v. United States,* 1 Cl.Ct. 352 at 366 (Cl.Ct.1983) (SPECTOR, J.).

16. Defendant also contends that plaintiff's equipment does not meet the "two axle" requirement of RFP 5388, and that that requirement is perfectly valid. This contention need not be and is not reached.

RFP 5388. It asserts, however, that the components it would assemble into a tractor-scraper with a 14 cubic yard bowl "either require no redesign whatsoever, or minimal product modifications, or are standard optional items * * *." Plaintiff does *not* urge that the decision to adopt a product experience qualification requirement is in any way invalid; it alleges, rather, an "*arbitrary disqualification* of plaintiff's scraper with respect to product experience * * *" (emphasis supplied).

As the Department of the Army has held, plaintiff's response to RFP 5388 plainly contemplates supplying to the Department an end product that plaintiff has never sold, or even manufactured. Among other things, plaintiff's proposed "scraper" would contain a 400 horsepower engine utilizing fuel injectors and pumps, from another engine, "matched * * * to the desired 400 horsepower output," a transmission "matched," for the first time, to the desired 400 horsepower engine, and a scraper bowl modified, by "relocation of the scraper bowl sidewalls," so as to reduce its capacity from 20 to 14 cubic yards.[17]

■ In short, in a contemplated procurement of *commercial* earthmoving equipment, involving an expenditure of public funds in the amount of a quarter billion dollars, more or less, and validly requiring that any proffered equipment "have demonstrated proven performance * * * for a period of at least one year * * *," plaintiff has offered an admixture of components never put together as an end item, never sold or used commercially, and far from "proven" in commercial use or otherwise. The governmental decision so stating is not irrational, unlawful, or otherwise to be faulted. On this ground alone, plaintiff's complaint must be dismissed.

### B

■ In denying plaintiff's bid protest, the Comptroller General held, and accurately, that while DAR § 1–335 requires that life cycle costs be considered as a factor during the process of evaluation leading to a procurement decision, it does not require that such costs be utilized as an evaluation factor in making a contract award.

As noted in Section I, *supra,* in deciding upon the terms of RFP 5388, the Department of the Army carefully considered the matter of life cycle costs as a possible evaluation factor, concluded not to include such costs as an evaluation factor, and in fact did not do so. That conclusion cannot successfully be challenged here.

Plaintiff's complaint alleges that RFP 5388 "fails to provide for evaluation of life cycle costs of scrapers," and "violates DAR § 1–335 by failing to include any evaluation factor for life cycle cost benefits of proposed scrapers." The factual part of the allegation is accurate, but the charge of breach has no merit. DAR § 1–335 in no way *requires* that such an evaluation be made for award purposes. Nor can it fairly be said that the Army's decision not to utilize life cycle costs as an evaluation factor was without any rational basis. Indeed, on this record, the contrary is not only true but manifest. *See Kentron Hawaii, Ltd. v. Warner, supra.*

In opposing defendant's motion for summary judgment, plaintiff seems to argue, not that DAR § 1–335 has been breached by RFP 5388's terms, *per se,* but rather that there is some sort of obligation on defendant to adjust the price proposals made by others pursuant to RFP 5388 before comparing them to that price proposal submitted to defendant by plaintiff. If that is indeed plaintiff's present position, plaintiff is not better off.

Accepting for present purposes the propriety of plaintiff's suggested adjustment factor[18], the short answer is that plaintiff

---

**17.** Scraper blade segments would also have to be removed. While the size of the engine component of the tractor-scraper normally sold by plaintiff is unclear, it would appear to be larger than a 400 horsepower engine.

**18.** Plaintiff "suggests" that in the process of comparing its proposed product with what RFP 5388 describes, "one-third of the allocable pusher tractor ownership and operating costs

points to nothing whatever that would require or even permit the government to do so, or the court to order defendant to do so. *See Control Data, Corp. v. Baldridge,* 655 F.2d 283, 293 (D.C.Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). Indeed, doing so could well violate the clear and obligatory terms of RFP 5388, and result in vigorous, and not plainly unmeritorious, complaints from other bidders who did meet RFP 5388's terms.

### C

On this record, plaintiff's alleged "injury" plainly does not result from any improper conduct by *defendant.* If plaintiff has been damaged in the course of this procurement, the damage is attributable to plaintiff's inability to meet (or successfully to challenge) RFP 5388's product experience qualification requirement, and to a price offer placing it outside the range of competition.

Put another way, even were MILSPEC 53000 changed to permit three-axle scrapers, the evidence is clear that plaintiff could not become the successful bidder under RFP 5388 as it otherwise (and properly) stands. In short, there is "no substantial chance that plaintiff's proposal would lead to an award," and any governmental "breach of duty did not damage plaintiff." *Morgan Business Assoc., Inc. v. United States,* 223 Ct.Cl. 325, 332, 619 F.2d 892, 896 (1980). *See* also *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 44–46, 96 S.Ct. 1917, 1927–1928, 48 L.Ed.2d 450 (1976); *London Fog Co. v. Defense Logistics Agency,* Civ. No. 4–82–1334, decided December 22, 1982 (D.Minn.); *Kentron Hawaii, Ltd. v. Warner, supra,* 480 F.2d 1169, 1180–81 (D.C.Cir.1973).

In these circumstances, plaintiff's complaints about RFP 5388 lack any merit.

### IV

For the reasons set forth above, it is plain that granting injunctive or declaratory relief herein is inappropriate. Accordingly, plaintiff's motion for such relief is denied, and defendant's motion for summary judgment is granted. Plaintiff's complaint will be dismissed pursuant to Rule 58.

---

[must be added] * * * to the prices proposed by * * *" other offerors before any comparison of prices. *See* note 9, *supra.* *Cf.* note 12, *supra.* In any event, the evidentiary foundation for that suggestion rests on naked assumptions.