**SOUTHWEST MARINE, INC.**

v.

**The UNITED STATES.**

No. 592–83C.

United States Claims Court.

Oct. 17, 1983.

Jeffrey K. Kominers, Washington, D.C., for plaintiff.

Allen C. Peters, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; James H. Phillips and James Kelley, U.S. Dept. of the Navy, Washington, D.C., of counsel.

### ORDER

MARGOLIS, Judge.

Plaintiff Southwest Marine, Inc. (SWM) brings this action seeking injunctive relief and a declaratory judgment due to the rejection of plaintiff's proposal by the Department of the Navy Military Sealift Command. Plaintiff's proposal was submitted pursuant to Request for Proposal No.

N00033–83–4–0166 (RFP), a procurement for the overhaul and upgrade of the USNS Observation Island (T–AGM 23). Defendant had determined that plaintiff's technical/management proposal was technically unacceptable and excluded it from the competitive range. Plaintiff contends that the proposal was technically acceptable and that defendant violated applicable regulations by not informing plaintiff of the reasons for the rejection. Defendant asserts mainly that plaintiff will have little likelihood of succeeding on the merits and that the public interest prevents delaying the award of the contract. Furthermore, defendant contends that it was prohibited under the regulations from disclosing the requested information in the pre-award stage.

Plaintiff filed its complaint on September 26, 1983. At a hearing that day, defendant stipulated that the contract would not be awarded prior to the close of business on October 5, 1983. An expedited briefing schedule was ordered, and defendant submitted a motion for summary judgment on September 28, 1983. A response and reply were submitted, and argument was heard on October 5, 1983. This Court, from the bench, denied the plaintiff's motion for a temporary restraining order and a preliminary injunction, and also denied the defendant's motion for summary judgment.

### Pertinent Facts

The USNS Observation Island collects data on foreign strategic ballistic missile tests. Since the ship is scheduled to be available only for a limited time, all of the work procured must be completed between January 7 and July 6, 1984. The RFP indicated that the contract would be awarded on or about October 7, 1983 to assure a full three month prior period to order the necessary materials, prepare for the work, and complete the prefabrication.

The RFP stressed the complexity of the overhaul and upgrade and the strict time requirements. Offerors were to submit a price proposal and a technical/management proposal separately. The information requested in the technical/management proposal was to be presented with sufficient depth to allow the government to make an evaluation of the offeror's understanding of the Statement of Work. The proposals would be evaluated on the basis of some nineteen criteria explained in detail in the RFP.

The parties agree that plaintiff's proposal was timely and responsive. In a letter dated August 26, 1983 and received by plaintiff on September 7, 1983, however, defendant notified plaintiff that the competitive range had been established, that those offerors within the competitive range had been notified, and that the Military Sealift Command would not be contracting with the plaintiff on this procurement. In a telephone conversation the next day, Robert Bates, a representative of plaintiff, was told that plaintiff's proposal was so technically inferior that no discussions or changes could have brought it within the competitive range.[1] Bates was further told that a full debriefing would be given after the award.

Bates expressed two concerns. The first was whether some problems plaintiff was having with its floating dry-dock had prejudiced plaintiff's bid. Bates was told that since this was a matter for the pre-award survey it had not been considered. The second was whether the rejection was a "ram job" because of problems plaintiff and defendant were having on another contract. Bates was told that the procurement was "right by the numbers," and that the contracting officer had been told that any "bad blood" between the parties was not to be considered in evaluating plaintiff's bid.

Plaintiff subsequently pressed defendant for a more detailed explanation of the rea-

1. Because the contracting officer told Bates that plaintiff's bid was rejected on the basis of plaintiff's technical proposal, plaintiff initially argued that defendant acted improperly by not considering plaintiff's price proposal. This contention was erroneous. Plaintiff's price proposal was fully evaluated, but plaintiff's bid was excluded from the competitive range largely on the basis of deficiencies in plaintiff's technical proposal. The record establishes that there was more than one price proposal lower than plaintiff's.

sons for the rejection of the proposal. When those efforts failed, this suit followed.

### Temporary Restraining Order and Preliminary Injunction

The scope of review of an agency's pre-award procurement decision is extremely limited. *Baird Corporation v. United States,* 1 Cl.Ct. 662 (1983) (Lydon, J.). A contracting officer is given wide discretion in the evaluation of offers and the application of procurement regulations, and this Court should not substitute its judgment for that of the contracting officer. *Big Bud Tractors v. United States,* 2 Cl.Ct. 188 (1983) (Wood, J.); *Baird Corporation v. United States,* 1 Cl.Ct. at 664. The court should intervene only when it has been clearly determined that the agency acted with no rational basis. *Yachts America, Inc. v. United States,* 3 Cl.Ct. 447, 449 (1983) (Mayer, J.); *Baird Corporation v. United States,* 1 Cl.Ct. at 664.

The factors which this court must weigh in determining whether injunctive relief is warranted are well established: (1) whether there is a likelihood that plaintiff will succeed on the merits; (2) whether plaintiff will suffer irreparable injury if the injunctive relief is not granted; (3) whether the threatened injury to plaintiff outweighs the harm accruing to other parties if the relief is granted; and (4) whether granting the relief is in the public interest. *Sogitec Inc. v. United States,* 2 Cl.Ct. 533 (1983) (Margolis, J.); *N.V. Phillips Gloeilampenfabrieken v. United States,* 1 Cl.Ct. 783 (1983) (Yock, J.). Because injunctive relief is so drastic in nature, plaintiff must establish its right to relief by clear and convincing evidence. *Id.* This, plaintiff has not done.

First, the public interest militates strongly against awarding injunctive relief in this case. The statute which gives this court the power to award injunctive relief in the pre-award stage, 28 U.S.C. § 1491(a)(3), expressly directs that the court "shall give due regard to the interests of national defense and national security." When national defense and security concerns are involved, the court "should be very careful and wary before upsetting these procurement decisions." *Gloeilampenfabrieken,* 1 Cl.Ct. at 784.

Here, Major General James C. Pfautz, the Assistant Chief of Staff, Intelligence, U.S. Air Force, Pentagon, stated in his affidavit that the Observation Island provided information that was "vital and unique" to assessing foreign offensive ballistic missile capabilities and potential launchings, to force planning and development of U.S. defensive missile systems, and in monitoring foreign treaty compliance. The Air Force has taken "all possible steps" to limit the duration that the ship will be inoperable, and this procurement has been given the Department of Defense's highest priority. In Pfautz's opinion, "any delay in [the] contract award . . . will adversely impact the Air Force's capability to provide necessary support to national military and civilian leaders and will be detrimental to the national defense." The affidavits of Manfred Eimer, the Assistant Director for Verification and Intelligence of the U.S. Arms Control and Disarmament Agency, and Thomas G. Connors, the Military Sealift Command Project Engineer, further support the exigency with which this contract must be awarded and completed.

Plaintiff, while conceding the importance of the ship to the national defense, contends that the concerns are only "superficially impressive" because, it claims, it can be awarded the contract as late as November and still complete its obligations by July 6, 1984. Plaintiff supports its contention with affidavits of its principals which state that the preliminary tasks of ordering the necessary materials, planning and designing the prefabrication and other preparatory work can be completed in less than the allotted three month period. Plaintiff's contentions, however, are rebutted by its very bid which is replete with statements indicating the need to commence work immediately upon award of the contract. For example: "it is essential that all evolutions must proceed . . . in a timely fashion" (plaintiff's Bid at 1.); "immediately on receipt of the con-

tract, SWM will institute the planning and design phase ..." (*Id.*); "considering the overall work scope for the total project ... it is essential that most of this type of work be started soon after the order to proceed and that it be substantially completed before the ship arrives." (*Id.* at 4).

Second, plaintiff has not persuaded this Court that it is likely to succeed on the merits. The affidavits submitted by defendant satisfy this Court that plaintiff would have little likelihood of showing that plaintiff's proposal was given any different treatment and consideration than all of the other proposals, that it was not fully and fairly considered, or that the agency had no rational basis for its decision.

According to the affidavit of the contracting officer, Peter F. Runfola, all of the technical/management proposals were first evaluated by the Technical Proposal Evaluation Group (TPEG). The TPEG determined that plaintiff's proposal was totally unacceptable. Runfola himself then reviewed plaintiff's proposal and concluded that it was "so technically inferior that SWM should be excluded from the competitive range."

The affidavit of the Chairman of the TPEG, submitted *in camera,* indicates that each element of each technical/management proposal was evaluated in light of the criteria listed in the RFP. The written evaluation of plaintiff's proposal was also submitted to the Court. This Court, having reviewed that evaluation, is satisfied that plaintiff would have little likelihood of proving that there was no rational basis for the agency's decision.

Plaintiff contends, however, that defendant violated procurement regulations by failing to notify plaintiff of "any specific deficiency or unacceptable element" of plaintiff's technical proposal. Such notice, plaintiff asserts, is required by 32 C.F.R. § 3.508.2(a) (1982). The defendant argues

that it is required to provide offerors with unacceptable proposals with only a general explanation for rejection of its proposal. Furthermore, other regulations prohibit the defendant from disclosing before the award the type of specific information which plaintiff seeks.

The applicable regulation, 32 C.F.R. § 3–508.2(a) (1982), provides that prompt notice shall be given to an offeror whose proposal has been rejected. The notice shall include "in general terms" the basis for the decision. Section 3–508.4 governs debriefings of unsuccessful offerors. A debriefing is defined as the process in which unsuccessful offerors are given the government's evaluation of the significant factors in their proposal, including "determinative deficiencies and weaknesses." Such is the nature of the information plaintiff requests here. There are two stated purposes for giving debriefings. First, to allow the unsuccessful offerors to improve future proposals. Second, to give assurances that "the selection" was handled fairly. Given these stated purposes—and particularly noting the usage of "the selection"—it seems clear to this Court that plaintiff was entitled to a debriefing only *after* the contract award.

Moreover, 32 C.F.R. § 3–507.2(a) (1982) prevents an agency from disclosing to the public any information contained in any proposal or any information regarding the number or identity of offerors. Section 3–507.2(b) bars an agency from providing "any information to a potential supplier which alone or together with other information may afford him an advantage over others." [2] Considering these disclosure prohibitions, defendant did not act unreasonably in refusing to give a detailed evaluation of plaintiff's proposal before the award was made.

In *Enviro Control, Inc.,* B–205722, 82–1 C.P.D. ¶ 333 (1982), the Comptroller General held that § 3–508.2(a) requires the agency

---

**2.** Defendant's concern for potentially violating 32 C.F.R. § 3–507.2(b) caused it to submit information regarding its internal evaluation procedures relative to this procurement and its evaluation of plaintiff's proposal *in camera.* At argument, this Court offered to allow counsel for plaintiff to view the documents, provided counsel did not show them to the plaintiff's principals. On those conditions, counsel refused the offer.

to give only a general explanation of the basis for exclusion from the competitive range, and that § 3–507.2 prohibits extensive pre-award disclosures.

From the foregoing, it is apparent that defendant's rejection letter to plaintiff, while adequate notice that plaintiff's proposal was not to be accepted, did not indicate "in general terms" the reasons for the agency action. The letter combined with the telephone discussion between Bates and the contracting officer, however, was sufficient to notify plaintiff, in general terms, of the reasons for excluding plaintiff from the competitive range. In addition, where the record now before this Court appears to show a rational basis for the contracting officer's decision, injunctive relief is not warranted.

In sum, the detriment accruing to plaintiff by not receiving the contract award simply does not outweigh the public interest in having this procurement go forward, in light of the failure of plaintiff to persuade this Court that it is likely to prevail on the merits.

*Summary Judgment*

Defendant has indicated that it will fully debrief plaintiff by October 11, 1983. After the debriefing, if plaintiff wishes to pursue its claim it may do so. Although the record weighs heavily in favor of defendant, this Court will not decide the merits of plaintiff's claim until plaintiff has had an opportunity to evaluate the defendant's rationale.

Plaintiff's motions for a temporary restraining order and preliminary injunction are denied. Defendant's motion for summary judgment is denied without prejudice to renewal.

IT IS SO ORDERED.