**TELE–SENTRY SECURITY, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE (AIR FORCE), et al., Defendants.**

Civ. A. No. 88–3491.

United States District Court, District of Columbia.

Jan. 23, 1989.

Kenneth K. Takahashi, Washington, D.C., for plaintiff.

G. Paul Bollwerk, Sp. Asst. U.S. Atty., Mark K. Stephens and Kathleen E. Furst, U.S. Small Business Administration, Washington, D.C., for defendants.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending before the Court are cross-motions for summary judgment filed by plaintiff Tele–Sentry Security, Inc. (TSSI) and defendants United States Department of Defense (Air Force) (hereinafter "DOD"), Secretary of Defense Frank Carlucci, the Small Business Administra-

tion (SBA), and SBA Administrator James Abdnor. For the reasons set forth below, defendants' motion will be granted and plaintiff's denied.

## I. Background

Government agencies considering bids for procurement awards are required by federal regulations to make two independent determinations. They must first find that the firm seeking the contract is a "responsive" bidder; in other words, that the bid submitted complies with the invitation issued by the agency. *See* 48 C.F.R. § 14.301. In addition, the procurement official must be satisfied that the firm in question is "responsible" and can meet applicable financial and technical standards. *Id.* § 9.104–1.

Small business concerns seeking to show that they are "responsible" are afforded an additional measure of protection under the Small Business Act of 1958, 15 U.S.C. § 631 *et seq.* Pursuant to 15 U.S.C. § 637(b)(7)(A), the SBA is empowered to certify that a small business concern is competent to perform a particular procurement contract. The SBA's decision to issue this statement, known as a certificate of competency (COC), is binding upon the procuring agency, which must then award the contract to that firm. *Id.* § 637(b)(7)(C).

This case concerns a contract for the repair and maintenance of land mobile radios at Williams Air Force Base in Arizona. On August 10, 1988, DOD issued a bid solicitation for the contract, which was to last for a period of one year with an option to extend for an additional four. When the bids were opened on September 16, 1988, TSSI was the low bidder.[1] On November 3, 1988, however, TSSI received a letter from the SBA stating that DOD's contracting officer had determined that TSSI was nonresponsible, and its bid unacceptable, because:

1. Your firm's past performance on this requirement was rated less-than satisfactory.

2. Your firm failed to demonstrate you have the technical capability to perform.

3. Your firm's competency was questioned by [the contracting officer].

4. Your firm's on time delivery of service was rated as less-than-satisfactory.

Administrative Record (AR) 2. The letter also stated SBA would perform an "independent survey of your firm, reviewing both financial and technical capabilities, to determine whether it considers your company to have the requisite competence to meet contractual requirements in a timely manner"; if a favorable decision were made, TSSI would be issued a COC and would be awarded the Williams contract. *Id.* TSSI was directed to submit a COC application, together with supporting financial and technical documentation, by November 10, 1988.

After securing the services of an accounting firm, TSSI submitted the required materials, *see* Complaint, Exhibit B, but on November 28, 1988, SBA denied its application. The agency noted that it had carefully reviewed TSSI's submission but that it did not "find sufficient reasons for reversing the nonresponsibility decision of the contracting officer." AR 462. The SBA articulated two reasons for its decision:

Specifically, your firm is in reorganization and operating without an approved plan. There is no assurance as to how long your firm can continue to operate. In addition, your firm's past performance is unsatisfactory as evidenced by unresolved surety bond losses on three SBA guaranteed loans totalling approximately $309,500.

*Id.*

TSSI filed this action on December 7, 1988. Predicating jurisdiction under 28 U.S.C. §§ 1346, 1361 and 1391, plaintiff challenged the reasons set forth by the SBA for denying its COC application and maintained that the SBA had decided to reject the application even before TSSI had submitted it. Complaint ¶¶ 25–30. As relief, the complaint sought (1) a temporary restraining order enjoining DOD from accepting the bid of, or awarding the Williams contract to, any bidder other than

---

1. Two other bids were also received. Complaint ¶ 9.

plaintiff; (2) an order compelling SBA to issue a COC to TSSI; (3) reimbursement of the accounting expenses plaintiff incurred in filing its COC; and (4) attorney's fees and costs. On December 8, 1988, TSSI filed a motion for a temporary restraining order as to DOD, seeking to prevent it from taking any action on the Williams contract until after a decision was issued on the merits, and a motion to compel as to SBA, seeking an order requiring it to issue a COC to plaintiff.

A scheduling conference was held that same day, at which time plaintiff agreed to convert his motion for a temporary restraining order into a motion for summary judgment and proceed to a final disposition on the merits. *See* Order of December 8, 1988.[2] On December 21, 1988, TSSI amended its complaint by adding two new paragraphs. One challenged the DOD's decision as unreasonable, arbitrary and capricious, and a breach of its implied contract to fairly and honestly consider TSSI's offer; the other challenged the SBA's decision as unreasonable, arbitrary and capricious, and unsupported by substantial evidence.[3] Subsequently, defendants filed their own motion for summary judgment. A hearing was held on the parties' cross-motions on January 13, 1989.

## II. Governing Legal Standards

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The Supreme Court has recently proclaimed that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)

(quoting Fed.R.Civ.P. 1). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), articulated two inquiries that must be made before summary judgment may be granted. First, there must be no dispute as to any *material* fact, which the Court described as one "that might affect the outcome of the suit under governing law." 477 U.S. at 248, 106 S.Ct. at 2510. Second, even if such a dispute exists, summary judgment will be granted if the dispute is not *genuine.* In this regard, the trial judge must not "weigh the evidence and determine the truth of the matter" but rather should perform "the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 249–50, 106 S.Ct. at 2511. Finally, the Court pointed out that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

Other standards also govern the consideration of this case. In reviewing final action by an administrative agency under the Administrative Procedure Act, this Court may only overturn those findings and conclusions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has cautioned that, under arbitrary and capricious review, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). At the same time, however, the reviewing court must be satisfied that "the agency's decisionmaking

---

**2.** Defendants also agreed that it was unlikely that the contract would be issued before the end of 1988 and, if any action were imminent, they would provide plaintiff's counsel with 48 hours' notice to allow him to seek temporary relief. *Id.*

**3.** The amended complaint also slightly altered TSSI's prayer for relief to add a $1500 claim for the costs it incurred in preparing its bid on the Williams contract.

was 'reasoned,' " [4] and that it "considered the relevant factors and explained the facts and policy concerns on which it relied, and whether those facts have some basis in the record." *National Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir.1988).

Moreover, in *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir.1971), Judge Leventhal observed that, because of "the application of technical, and often esoteric, regulations to the complicated circumstances of individual procurements," the reviewing court "is obligated to restrict its inquiry to a determination of whether the procurement agency's decision had a reasonable basis." 455 F.2d at 1301. Accordingly, review of procurement decisions "is, and should be, extremely limited in scope," *Baird Corporation v. United States*, 1 Cl.Ct. 662, 664 (1983), and the burden of demonstrating an unreasonable decision lies with the disappointed bidder. *Id.* If a reasonable basis exists the court must sustain the agency's action, "even though [the court] might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Steinthal*, 455 F.2d at 1301.[5] With these standards in mind, we consider the decisions under review.

## III. Discussion

### A. The Air Force Decision

The criteria governing responsibility determinations are set forth at 48 C.F.R. § 9.104–1.[6] It provides in pertinent part:

To be determined responsible, a prospective contractor must

(a) Have adequate financial resources to perform the contract, or the ability to obtain them;

(b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;

(c) Have a satisfactory performance record;

(d) Have a satisfactory record of integrity and business ethics;

(e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them ...;

(f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them; and

(g) Be otherwise qualified and eligible to receive an award under applicable law and regulations.

Having evaluated these factors, the Air Force contracting officer issued her determination on October 7, 1988. AR 10. Although concluding that TSSI possessed adequate financial resources to perform the contract, *see* AR 12, she found that the firm's past performance and technical capabilities compelled a finding of nonresponsibility. *Id.* Her finding was based on letters and memoranda concerning TSSI's performance on a similar contract at Williams between October 1985 and December 1986.[7] These materials revealed a number of complaints about TSSI by personnel at Williams for inadequate repair work, disputes over the scope of·the contract, and other instances of poor performance. *See* AR 16–60. The contracting officer therefore found that TSSI's past performance was unsatisfactory and that the firm was a nonresponsible bidder.[8]

---

**4.** *American Horse Protection Association v. Lyng*, 812 F.2d 1, 5 (D.C.Cir.1987) (quoting *Professional Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1220 (D.C.Cir.1983)).

**5.** TSSI does not dispute these standards of review. *See* Plaintiff's Motion for Summary Judgment (Pl. Motion) at 5, 10–11.

**6.** Unless otherwise noted, all regulations cited are from Part 48 of the Code of Federal Regulations and shall be referred to as "section _____."

**7.** The information was submitted to the contracting officer by base officials after they learned that TSSI was low bidder on the radio contract. AR 11.

**8.** Section 9.104–3(c) provides:

A prospective contractor that is or recently has been seriously deficient in contract performance shall be presumed to be nonresponsible, unless the contracting officer determines that the circumstances were properly beyond the contractor's control or that the

■ TSSI attacks this determination on several fronts. It first contends that the Air Force decision was arbitrary and capricious because the contracting officer was required to, but did not, conduct a preaward survey before issuing her decision. A close reading of applicable regulations, however, shows that a preaward survey is *not* required. Although section 9.105–1 does state that "[b]efore making a determination of responsibility, the contracting officer shall possess or obtain information sufficient to be satisfied that a prospective contractor currently meets the applicable standards in 9.104," two other provisions make clear that a preaward survey is only *one* method of obtaining this information. Section 9.106–1(a) provides that "[a] preaward survey *is normally required* when the information on hand or readily available to the contracting officer is *not* sufficient to make a determination regarding responsibility"; section 9.105–1(b)(1) states that "[g]enerally, the contracting officer shall obtain information regarding the responsibility of prospective contractors, including requesting preaward surveys *when necessary* (see 9.106), promptly after a bid opening or receipt of offers" (emphasis added). This reading of the plain language of the regulations is reinforced by the bid solicitation for the Williams contract, which twice refers to the survey in contingent, not absolute, terms. *See* AR 290 (a preaward survey "may be conducted"; "[i]f a preaward survey is conducted").

■ TSSI next faults the contracting officer for not obtaining more current information about TSSI's technical capability, specifically pointing to a contract performed by TSSI at the Luke Air Force base beginning in April 1988. This contention will also be rejected. Officials at Williams had substantial experience with TSSI's performance in handling the peculiar needs of that facility and the contracting officer took into account those problems in reach-

ing her decision. The fact that TSSI may have been fulfilling a more recent contract at another base (one which had only begun in April 1988) does not make the contracting officer's reliance on TSSI's performance at Williams (a year-long contract that had been completed in December 1986) irrational or capricious.

Finally, TSSI maintains that the contracting officer erred because the complaints she considered were not "quality evidence," describing some as "innocuous charges." Pl. Motion at 8. It is not the function of this Court to judge the quality of the evidence that the Air Force considered in making its decision, nor does the Court have the capability to do so. In light of the substantial discretion conferred upon procurement officials, it cannot be said that the contracting officer acted improperly by predicating her decision on the complaints contained in the record. *See* section 9.104–3(c) ("Past failure to apply sufficient tenacity and perseverance to perform acceptably is strong evidence of nonresponsibility"). TSSI has therefore failed to overcome the presumption of correctness surrounding the decision by the Air Force contracting officer.[9]

### B. The SBA Decision

■ After TSSI appealed the contracting officer's decision, the SBA conducted both a technical and financial review of TSSI's application for a certificate of competency. Upon examining TSSI's equipment and facilities and surveying its past and current customers, an SBA industrial specialist concluded that TSSI was technically qualified to receive a COC. AR 314. TSSI's financial affairs, including its financial statements and credit sources, were also scrutinized by an SBA loan specialist. Although TSSI was originally found qualified to receive a COC, the loan officer reconsidered her conclusion and recommended against a COC when she learned of additional finan-

---

contractor has taken appropriate corrective action.

**9.** In any event, a ruling to the contrary would be of no aid to TSSI because, as discussed *infra*, the Court has determined that the SBA's compe-

tency decision was justified and correct and such SBA decisions are binding on procurement agencies, *see* 13 C.F.R. § 125.5(j). The issue has been addressed, however, because it had been extensively briefed and argued by the parties.

cial information about the firm. AR 408. Specifically, she discovered that SBA had been required to pay out a total of $309,000 as surety on two bonds for government contracts—one at Keesler Air Force Base in Mississippi, the other at the federal courthouse in Atlanta, Georgia—that had been awarded to TSSI. She also learned that a disagreement with the General Services Administration (GSA) over the Atlanta contract had led TSSI into litigation before the GSA Board of Contract Appeals and that TSSI had declared Chapter 11 bankruptcy. Information provided to the loan officer disclosed that TSSI was operating without a plan of reorganization, that the amount of its recovery from GSA was unclear, and that the SBA had received only $3000 from TSSI towards its outstanding debts of $309,000. AR 408–12. Based on all of this information, she recommended against a COC for TSSI.[10]

Although TSSI assails the SBA's decision on several grounds, none is persuasive. Citing two decisions of the Comptroller General as well as 11 U.S.C. § 525, it first contends that SBA may not deny a COC to TSSI based solely on the fact that the firm is currently in bankruptcy. While TSSI has stated the law correctly, its argument ignores reality and must be rejected. As the record plainly reflects, several other factors—the large bond payouts by SBA, the uncertainty of TSSI's recovery from GSA, the lack of a plan of reorganization for over four years—contributed to the SBA's decision. Bankruptcy alone did not cause the agency to refuse a COC.

Plaintiff also maintains that the SBA's decision was erroneous because there is "serious doubt" about the validity of the amounts paid by SBA on the two surety loans and claims that it lacks the information needed to dispute the amounts. Pl. Motion at 14. As materials attached to TSSI's own affidavits reveal, however, it is clear that TSSI knew of the existence of these liabilities since May 1983 and of their approximate amounts since June 1987.[11] In any event, TSSI's quibbling over the precise amount that it owes to SBA—a figure that may actually be *larger* than the $309,000 now outstanding (*see* Def. Reply at 6 n. 5)—does not suffice to meet its burden of showing that SBA's determination was arbitrary and capricious, since SBA was certainly entitled to take the existence of these debts into account when evaluating TSSI's financial status.

Finally, TSSI argues that the SBA erred when it denied a COC based on TSSI's future ability to perform, rather than confining itself to the firm's present capacity. Pl. Motion at 11–12. This contention is dubious from a legal standpoint: TSSI cites no authority to support its proposition and COC regulations clearly contemplate resort to predictive determinations.[12] Moreover, TSSI's position runs contrary to common sense: a decisionmaker would be remiss if, in determining whether a firm is competent to perform a contract, he blinded himself to the possibility that the firm would soon encounter financial difficulties that could preclude adequate performance of the contract.

## IV. Conclusion

For all of these reasons, the Court concludes that TSSI has failed to meet its burden of showing that either the SBA or Air Force decisions under review were arbitrary or capricious, an abuse of discretion or otherwise not in accordance with law.[13]

---

**10.** The recommendation was unanimously accepted on November 28, 1988 by a three-member COc Regional Review Committee and by the SBA's Assistant Regional Administrator for Procurement Assistance. AR 297–99.

**11.** *See* May 24, 1983 letters to TSSI attached to December 31, 1988 Affidavit of James L. Leather; June 16, 1987 letter from James E. Watt attached to December 31, 1988 Affidavit of James E. Watt.

**12.** *See* section 9.103(c) ("The award of a contract to a supplier based on lowest evaluated price alone can be false economy if there is subsequent default, late deliveries, or other unsatisfactory performance resulting in additional contractual or administrative costs").

**13.** In light of this disposition, TSSI has failed to show that it is entitled to its bid preparation and filing costs because its bid was not considered honestly and fairly. In addition, the Court need not and does not consider defendants' arguments that TSSI may not obtain mandamus or

Accordingly, it is

ORDERED that defendants' motion for summary judgment be and it hereby is granted; it is

FURTHER ORDERED that plaintiff's motion for summary judgment be and it hereby is denied; and it is

FURTHER ORDERED that this action be and it hereby is dismissed.

injunctive relief in this action. *See* Def. Motion at 2–4 & n. 1. But with respect to the latter point, *see Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir.1987); *San Antonio General Maintenance v. Abdnor*, 691 F.Supp. 1462 (D.D.C.1987) (Green, Joyce Hens).