**CYGNUS CORPORATION, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant,**

and

**Professional and Scientific Associates, Inc., Intervenor.**

No. 05–1313C.

United States Court of Federal Claims.

July 13, 2006.

Hilary S. Cairnie, Vorys, Sater, Seymour & Pease, LLP, Washington, D.C., Counsel for Plaintiff.

Tara K. Hogan, Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record for the Defendant. With her on the briefs were David M. Cohen, Director, James M. Kinsella, Deputy Director, and Peter D. Keisler, Assistant Attorney General.

Mogbeyi E. Omatete, Department of Health and Human Services, Washington, D.C., Of Counsel for Defendant.

Michael R. Hatcher, Davis Wright Tremaine LLP, Washington, D.C., Counsel for Intervenor.

John M. Bergen and Stephanie Wilson, law clerks.

## OPINION

BASKIR, Judge.

Plaintiff Cygnus Corporation, Inc. (Cygnus) is the incumbent contractor providing services to meet the general research and support requirements of the Agency for Healthcare Research and Quality (AHRQ), an operating division within the Department of Health and Human Services (DHHS). Cygnus filed this bid protest challenging AHRQ's decision to cancel Request for Proposals AHRQ–06–0003 (the "RFP"), entitled "General Research and Support for AHRQ." The parties have filed cross-motions upon the administrative record.

While the Government is given great latitude in its decisions to cancel a solicitation or a request for proposals, a justification is valid only if supported by the Administrative Record. Here, AHRQ gave two justifications for cancelling the RFP: (1) a determination that procuring these research services under the Events Management Services (EMS) Blanket Purchase Agreements (BPAs) would result in a savings over using the AHRQ contractors; and (2) a determination that the work provided by the EMS BPA contractors is similar or identical in nature to the work provided under the RFP.

We find that AHRQ's stated cost savings justification is unsupported by the Administrative Record. However, we find that AHRQ's similarity of work justification is a rational basis for cancelling the RFP. **We therefore affirm AHRQ's decision to cancel the procurement, grant the Government's Motion for Judgment on the Administrative Record, and deny Plaintiff's Cross-Motion.**

## BACKGROUND

### I. *Cygnus' AHRQ Contract*

Cygnus is a small business that has provided general research and support services to AHRQ under Contract No. 290–01–001 since November 28, 2000. Administrative Record (AR) at 33. Under this contract, Cygnus provided the same services that are described in the RFP AHRQ–06–003 Statement of Work. Cygnus' AHRQ contract was originally set to expire in late 2005. Sometime during the procurement process for the RFP, AHRQ and Cygnus mutually agreed to extend Cygnus' general research and support services contract until January 31, 2006, when AHRQ determined that it needed more time to make its procurement decision. When AHRQ ultimately cancelled the RFP and Cygnus filed this bid protest, AHRQ agreed to extend Cygnus' contract until June 30, 2006, while this case was litigated.

### II. *AHRQ's 2005 Request for Proposals (RFP)*

On June 6, 2005, the Project Officer for the Office of Performance Accountability, Resources and Technology (OPART), a component of AHRQ, instructed the OPART Contracting Officer to issue a Request for Proposals for the procurement of general research and support services.

AHRQ initially planned for the new solicitation to be set aside for businesses certified by the Small Business Administration's (SBA) 8(a) program. Cygnus is not an SBA 8(a) Small Business. On June 24, 2005, Cygnus filed a protest with the Government Accountability Office (GAO) claiming that the set-aside for the SBA 8(a) program would have an adverse financial impact on Cygnus pursuant to 13 C.F.R. § 124.504(c). On July 7, 2005, AHRQ determined that the contract would remain in the small business program and would not be transferred to the SBA. Cygnus withdrew its protest.

On August 1, 2005, AHRQ issued the RFP entitled "General Research and Support Services for AHRQ." The objective of the RFP was to:

> Provide services to AHRQ components in many areas including meeting management and support; the development and preparation of documentation, such as; writing, editing and reproduction or reports and proceedings; and technical and administrative services such as literature searches, identification and recruitment of specialized expertise; and meeting facilitation to include access to a range of expert facilitators; and preparation for and conduct of meetings related to Agency management matters.

AR at 64. The RFP Statement of Work stated that the contractor would be required to "[p]lan, schedule, and arrange for and report on approximately 50 meetings per year," AR at 64, "provide for the preparation of specified substantive health services research and health policy materials and documents," AR at 65, and "[p]rovide specified support for approximately 10 other meetings per year that AHRQ will co-sponsor." AR at 66.

On August 23, 2005, AHRQ issued an amendment to the RFP solicitation to answer questions from prospective contractors. Some of the questions asked for clarification of the healthcare research and substantive knowledge requirements of the RFP. The Agency clarified that the contractor should include a staff with expertise in conducting analytical/program research, evaluation, and strategic planning; that the contractor's role in identifying experts could require substantive knowledge of the meeting topic, or could be only an administrative/logistical task, depending on the situation; that the contractor would be responsible for both research and writing substantive articles and editing such documents for printing; that the primary purpose of the contract is to provide logistics support with some supporting research elements; that the contractor could be asked to conduct original research in the preparation of AHRQ management and research activities; and that the contractor may be asked to identify subject area experts to review reports, papers and other documents. *See* AR at 123–138, Questions 30, 33, 47, 82, 83, 90, and 92.

AHRQ received seven proposals in response to the RFP. Three of the seven proposals were considered to be technically acceptable. Of those three proposals, only two, Cygnus and AFYA, Inc., were considered to be within the competitive range based on their technical score, past performance score, and initial proposed cost. The Contracting Officer and the Director of OPART determined that it was reasonable to negotiate the proposed contract with Cygnus and AFYA.

III. *DHHS Blanket Purchase Agreements*

The Office of the Secretary for Administration and Management (OSAM) of DHHS, issued a policy, the Strategic Source Initiative (SSI), as part of an agency-wide initiative to reduce operational costs. One strategy was to lower operating costs by using blanket purchase agreements with vendors to receive discounts for: (1) temporary administrative and professional staffing services; (2) temporary professional and medical staffing services; (3) event management services; and (4) lab supplies. AR at 152. Individual operating divisions within DHHS were given the opportunity to lead the agency for managing individual contracts, including events management, but due to a lack of staff, AHRQ declined to be lead agency for event management. The National Institute for Health was selected as the managing agency for event management BPAs.

DHHS entered into BPAs with four Section 8(a) Federal Supply Schedule (FSS) contractors for event planning: Professional and Scientific Associates, Inc., B.L. Seamon, Planning Professionals Limited, and Consolidated Safety Services. FSS contracts are listed for use by all federal entities to provide supplies and services at pre-approved prices, awarded by the General Services Administration falling within the general descriptions of the schedules. Agencies that anticipate a need for recurring services or products enter into BPAs with these FSS contractors for "simplified method of filling recurring needs for service and products, while leveraging [ ] buying power by taking advantage of quantity discounts[.]" AR at 240. The BPA can be viewed as an account "[e]stablished between ... the customer and a schedule contractor." *Id.*

The section of the BPA Statement of Work (the "BPA SOW") concerning event management requires the BPA contractor, among other things, to provide tools for order placement, tools for registration of attendees, provide on-line tutorials and event-specific training, facilitate planning meetings, manage logistics, provide status reports, and provide event specific performance-based reports. AR at 173–176. The BPA SOW also requires the contractor, when needed, to arrange for conference space, hotel rooms, transportation, VIP services, services for the

disabled, registration services, audio/visual services, pre– and post-conference materials, marketing and communications, storage and disposition of event materials, conference/event finances, and fiduciary services. AR at 177–181.

### IV. *AHRQ's Cancellation of the RFP*

On November 3, 2005, AHRQ and the entire DHHS staff were informed that events management services would be included in the Strategic Sourcing Contract Portfolio. All operational divisions, including AHRQ, were required to achieve an 85% "usage/compliance rate" with the BPA FSS contractors. In light of this, AHRQ's contracting office decided to cancel the solicitation.

In a November 18, 2005 email, Ms. Jackie Carey, the head of the contracting office for AHRQ, explained her reasons for choosing the strategic sourcing contracts rather than following through with the RFP. According to Ms. Carey:

> A review of the costs of the strategic sourcing contractors and the proposed successful offeror reveal [sic] that the strategic sourcing contracts will represent a savings *over using our own.* The work provided by the strategic sourcing contractors is similar or identical in nature to the work required by the agency, i.e., *they would be able to meet all of our requirements.*
>
> Based upon the above information, I cannot recommend that we proceed with the award of an AHRQ specific logistical support contract.

*Id.* (emphasis added).

On November 22, 2005, AHRQ notified Cygnus of the cancellation of the RFP. On December 16, 2005, Cygnus filed the Complaint in this Court. Because of this litigation, AHRQ agreed to extend Cygnus' original contract to June 30, 2006.

## DISCUSSION

### I. *Jurisdiction and Standard of Review*

This Court's jurisdiction over bid protest cases is prescribed by the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000), as amended by the Administrative Disputes Resolution Act

of 1996, Pub.L. No. 104–320, § 12(a), 10 Stat. 3870, 3874–75. Pursuant to that authority, we review procurement decisions of an agency under the standard of review set forth in the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). *See* 28 U.S.C. § 1491(b)(4) (2000). Our inquiry is limited to whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.; Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.2000).

Typically, there are two scenarios that may require that we set aside a contract award: (1) the agency's procurement decision lacked a rational basis; or (2) the procedure employed by the agency violated applicable procurement statutes or regulations. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir. 2001). Cygnus has pled both grounds in this protest and its arguments for each are interrelated.

### II. *Bid Protest Review*

Plaintiff filed its complaint and motion for an injunction in response to AHRQ's cancellation of the RFP and its announced intention of obtaining the research services through the EMS BPAs procured by DHHS. Plaintiff argued that AHRQ's decision to cancel the RFP lacked a rational basis, because AHRQ wrongly determined that it could acquire "all of its AHRQ Specific Requirements as set forth in the AHRQ RFP [statement of work], under any of the BPA's." Compl. ¶ 50. Plaintiff also argued that AHRQ offered a flawed cost analysis in support of its conclusion that cancelling the RFP in favor of obtaining services under the BPAs would result in cost savings for the agency. Pl. Opp. at 14–21.

### A. *Prejudice*

██ "[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.2003). When a plaintiff challenges the merits of an agency's procurement

decision as lacking a rational basis, the plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Id.*

Cygnus has established that prejudice because there was a substantial chance it would have been awarded the AHRQ "General Research and Support Services" contract absent the cancellation. Cygnus was the incumbent contractor and was one of only two bidders the agency determined to be within the competitive range based on their technical score, past performance score, and initial proposed cost. AR at 143–144. Prior to the cancellation of the RFP, the Contracting Officer and the Director of OPART had determined that it was reasonable to negotiate the proposed contract with Cygnus and AFYA. AR at 144.

### B. *Administrative Record Review*

In a typical challenge to an agency's procurement decision, the Court often reviews the agency's decision to award a contract to one bidder as opposed to another. The review is extremely deferential. The procuring agency need only provide "a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a 'heavy burden' of showing that the award decision had 'no rational basis.'" *Impresa Construzioni*, 238 F.3d at 1333 (internal citations omitted). Unless it is "wholly without reason," the agency's decision should not be disturbed. *TRW, Inc., v. Unisys Corp.*, 98 F.3d 1325, 1327 (Fed.Cir.1996); *see also, Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99, 117 (2003) (describing standard of review as "near draconian").

The plaintiff in a bid protest must do more than identify circumstances where the procuring agency made a mistake; it must establish that such a mistake was so excessive as to fall outside the decision-maker's ambit of discretion. In other words, the plaintiff must persuade us "that there was no rational basis for the agency's determinations." *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983).

This case comes before us on cross-motions for judgment on the administrative record pursuant to RCFC 56.1. In deciding Rule 56.1 motions, we take an existing administrative record and make factual findings from that record much as if we were trying the case on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356–57 (Fed. Cir.2005). Perhaps the defining characteristic of Rule 56.1, therefore, is that the parties are limited to the agency record for their proof of facts in support of their motion. More importantly, the Court is similarly restricted. No matter how reasonable we find the agency's justification for cancelling the RFP, if the reasons are not supported in the administrative record, then we have no choice but to rule in favor of the Plaintiff. We turn now to more fully examine those reasons in the context of the administrative record before us.

### 1. *Contracting Officer's Email*

The head of the contracting office for AHRQ, Ms. Jackie Carey, recommended cancelling the solicitation for a number of reasons. The overriding reason was to comply with the DHHS strategic sourcing mandate. An email from Ms. Carey on the subject of the "Logistical Support Contract" begins, "After my meeting downtown yesterday, a few things became perfectly clear: [ ] The Department is very serious about the use of the strategic sourcing contracts." AR at 155, Email from Jackie Carey, dated Nov. 18, 2005.

Further into this email, Ms. Carey explains her reasons—costs savings and similarity of work—for choosing to use the strategic sourcing contracts rather than following through with the RFP. According to Ms. Carey, a cost analysis revealed that placing orders under the EMS BPAs would represent a cost savings over following through with the RFP. *Id.* Furthermore, Ms. Carey stated that the EMS BPA contractors "would be able to meet all of our requirements." *Id.* The administrative record contains the approval of several of the addressees and exhibits no sign of disagreement. AR at 156–57.

### 2. *Agency's Discretion in Cancelling Requests for Proposals*

As a general matter, the greater the degree of discretion pertaining to a given pro-

curement task, the higher the burden faced by the protestor. *Blue & Gold Fleet, L.P. v. United States,* 70 Fed.Cl. 487, 493 (2006) (citing *CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 120 (2000)). Technical rankings of offerors, sorting of proposals within the competitive range, and best value determinations, for example, are all instances in which we are loathe to substitute our judgment for the expertise and discretion of the procuring agency. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996) (citations omitted). We believe that the cancellation of an RFP is also given a great degree of discretion, especially where, as in this case, the solicitation explicitly permits the agency to make no award at all. See AR at 95, Solicitation, § L.3(f)(2) ("The Government may reject any or all proposals if such action is in the Government's interest.").

Given the great degree of discretion afforded AHRQ in its decision to cancel the RFP, we must merely find that the "agency provides a coherent and reasonable explanation of its exercise of discretion." *Impresa Construzioni,* 238 F.3d at 1332. The APA requires the agency to consider all relevant factors and articulate "a rational connection between the facts found and the choice made," hardly an onerous burden. *Great Lakes Dredge & Dock Co. v. United States,* 60 Fed.Cl. 350, 358 (2004) (citations omitted). It is hard to quarrel with the conclusion that either of the reasons cited in Ms. Carey's email, *i.e.,* that AHRQ would experience a significant cost savings if the services were provided under the EMS BPAs, or that all of those services could be provided under the EMS BPAs, legitimizes the agency's decision so long as those justifications are borne out by the administrative record.

### 3. *AHRQ's Cost Savings Justification Is Unsupported by the Administrative Record*

Initially, we stress that, given an agency's broad discretion to cancel a solicitation, we would not require an agency to conduct an in-depth cost analysis of all alternatives to justify cancelling a solicitation in favor of a broader department-wide program. We are not aware of any authority, nor has Plaintiff suggested any, for the proposition that such a thorough cost analysis is required under these circumstances here.

 However, when an agency cites cost savings as a justification for cancelling a solicitation, the facts supporting this justification must be borne out in the Administrative Record. *See Great Lakes Dredge,* 60 Fed.Cl. at 358 (requiring a "rational connection between the facts found and the choice made"). Nothing in the Administrative Record supports Ms. Carey's statement that "[a] review of the costs of the strategic sourcing contractors and the proposed successful offeror reveal that the strategic sourcing contracts will represent a savings *over using our own.*" AR at 155 (emphasis added). Such a cost analysis was not required of AHRQ before cancelling the RFP. But, because AHRQ relied upon this alleged analysis in deciding to cancel the RFP, its conclusion must be supported by the Administrative Record.

The only document within the Administrative Record that the Government contends is a "loaded cost analysis" is a single page that breaks down Cygnus' labor rates. AR at 146. This document did not compare Cygnus' labor rates with anything or indicate what "analysis" was conducted using this information. A single line in Ms. Carey's email is not sufficient to support the agency's conclusion that it would recognize cost savings.

### 4. *AHRQ's Similarity of Work Justification Is Supported by the Administrative Record*

 The agency's second justification for cancelling the RFP in favor of using the EMS BPAs is more substantial. In her email, Ms. Carey concluded that "[t]he work provided by the strategic sourcing contractors is similar or identical in nature to the work required by the agency, i.e., they would be able to meet all of our requirements." AR at 155. The first part of this statement is sustainable—a comparison of the statement of work under the EMS BPA's and under the AHRQ solicitation reveals many similarities. Each contract was aimed primarily at the provision of routine event planning and management services, such as pre-

paring materials, lining up participants and speakers, and conducting the many logistical tasks inherent in organizing these events.

Yet the two contracts do not overlap completely. The AHRQ contract would have also demanded certain event-independent work. The example brought to light by Plaintiff's counsel at oral argument is the AHRQ solicitation's call for the "preparation of specified substantive health services research and health policy materials and documents" that are unrelated to scheduled meetings. AR at 65, RFP Statement of Work. Even counsel for the Government conceded that this aspect of the proposed AHRQ contract is "problematic," Oral Argument (OA) Tr. at 101, and is "the most difficult task to resolve in the context of the BPAs." OA Tr. at 99.

Although we agree with Plaintiff that these forty non-meeting related publications are arguably not covered by the BPAs, we note that Plaintiff raised this argument for the first time at oral argument. In its briefs, Plaintiff did not make this meeting/ non-meeting distinction; rather, Plaintiff argued that the substantive research services required by the AHRQ RFP were not covered by the EMS BPAs because the EMS BPAs covered only administrative event planning services. Raising a novel argument at oral argument deprives the opposing party the opportunity to adequately respond and violates this Court's Special Procedures Order. See Special Procedures Order of December 20, 2005, ¶ 10 ("Oral presentations will be limited to arguments and authorities contained in the written submissions. New matters advanced during argument may be ruled out of order.").

Even if Plaintiff's argument that these forty non-meeting related reports was properly before the Court, Ms. Carey's misstatement in her November 18, 2005, email that AHRQ could meet *all* of its requirements under the EMS BPAs does not render the agency's decision arbitrary and capricious. "Plaintiff must do more than identify circumstances where the contracting officer ... made a mistake." *Cubic Defense Sys. v. United States*, 45 Fed.Cl. 450, 458 (1999). We will not disturb AHRQ's decision unless Plaintiff

demonstrates "that the claimed misstep was so excessive as to fall outside the decision-maker's ambit of discretion." *Id.* A court "should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable." *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983).

Although AHRQ arguably cannot meet its event-independent research needs under the EMS BPAs, Ms. Carey's statement was otherwise accurate. The primary intent of the AHRQ contract "[was] for logistics support [in preparing for and conducting the meetings] with some supporting research elements." AR at 136, Amendment of Solicitation/Modification of Contract. The only task specific to the AHRQ RFP that is apparently not covered by the EMS BPAs is the preparation of approximately forty substantive health services research and health policy materials and documents that are not related to scheduled meetings. Plaintiff contends that the EMS BPAs do not cover substantive research support for event planning, but we agree with the Government that this aspect of the AHRQ RFP is covered by the broad language of the EMS BPA Statement of Work. Therefore, we find that Ms. Carey's misstatement that all of the services required under the AHRQ RFP could be obtained under the EMS BPAs was not "so excessive as to fall outside" her discretion to cancel the RFP. We conclude that the cancellation decision may be justified on this basis.

### III. Whether AHRQ's Procurement Decision Violated CICA

Plaintiff also contends that AHRQ's decision to cancel the RFP violated applicable procurement statutes or regulations. These corollary allegations are grounded in two statutes, the Small Business Act (SBA), 15 U.S.C. § 631, *et. seq.*, and the Competition in Contracting Act (CICA), 41 U.S.C. § 253, *et. seq.*, and their pertinent regulations. Compl. ¶ 55. Plaintiff's brief focused primarily on the second of these two statutes. According to Plaintiff, obtaining AHRQ Specific Requirements under one or more of the EMS BPAs would constitute a cardinal change to

the EMS BPAs that is not a proper basis for cancelling the RFP. Compl. ¶¶ 58–59.

To prevail on a CICA claim, Plaintiff must show (1) that there was a modification; and (2) that modification materially changed the scope of the original contract. *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 106 (2004). However, Plaintiff's claim is premature. AHRQ has not yet invoked the BPAs to obtain its research requirements. Moreover, Plaintiff faces standing and prejudice issues it must overcome before bringing such a claim.

## CONCLUSION

AHRQ's decision cancelling the AHRQ RFP in favor of following the Department-wide strategic sourcing initiative is not arbitrary and capricious. The Administrative Record supports AHRQ's justification that it can obtain substantially all of its events requirements under the EMS BPAs.

For the foregoing reasons, we **GRANT the Government's Motion for Judgment on the Administrative Record and DENY Cygnus' Cross–Motion for Judgment on the Administrative Record. Clerk of the Court is directed to enter judgment in favor of the Defendant.**

**IT IS SO ORDERED.**